The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Anthony Gilbert APODACA, Defendant-Appellant.

No. 80CA1184.

Colorado Court of Appeals, Div. II.

Dec. 9, 1982.

Rehearing Denied Jan. 20, 1983.

Certiorari Granted Aug. 29, 1983.

---

942

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Dolores Atencio, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Margaret L. O'Leary, Deputy State Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Anthony Gilbert Apodaca, appeals his conviction of second-degree assault, felony menacing, second-degree kidnapping, and crime of violence. We affirm.

The charges filed against Apodaca arose out of events following a wedding dance attended by both defendant and complainant. The two had danced together at the wedding and played pool at a bar later that evening. The complainant left the bar alone. After she had walked approximately half the distance to her home, defendant pulled up beside her in a truck and offered her a ride home. She refused and began to walk away. Defendant got out of his truck, leaving the motor running. He grabbed her by the hair, placed a knife against her ribs, and threatened to stab her if she did not get into the truck. She attempted to take the knife from him, resulting in her fingers being cut. Still holding the knife, defendant ordered her into the truck. This time she complied and entered the truck from the driver's side. He followed her, closed the door, and put the truck in gear. She then opened the passenger's door and escaped. The truck had moved forward between five and twenty feet before the complainant fled.

## I.

Apodaca asserts error in the trial court's refusal to rule at the close of the People's evidence on whether the People could use for impeachment purposes evidence of defendant's prior criminal record. He argues this unconstitutionally chilled his right to testify on his own behalf. We hold that the court should have ruled on the motion, but conclude that, under the circumstances present here, reversal is not required.

Section 13–90–101, C.R.S.1973 (1978 Repl.Vol. 8) provides that a previous felony conviction "may be shown for the purpose

of affecting the credibility of [a] witness." The statute is constitutional and does not impermissibly chill a defendant's right to testify. *People v. Henry,* 195 Colo. 309, 578 P.2d 1041 (1978), *appeal dismissed,* 439 U.S. 961, 99 S.Ct. 445, 58 L.Ed.2d 419 (1978). However, neither the statute nor the Rules of Criminal Procedure specify when a ruling on the use of a particular conviction is to be made.

In *People v. Salazar,* 44 Colo.App. 242, 610 P.2d 1354 (1980), this court recognized that the potential admissibility of a defendant's statement for impeachment purposes is a major factor in his decision whether or not to testify. *See also People v. Shoffner,* 627 P.2d 246 (Colo.1981) (overruling an unrelated part of *Salazar, supra*). In *Salazar* we held that failure to rule prior to the time defendant had to decide whether to testify cast an impermissible chill on his freedom of decision.

■ A similar situation confronted Apodaca here. The issue of whether a prior conviction is a felony conviction within the meaning of § 13–90–101, C.R.S.1973, is a threshold factor in determining whether the conviction is admissible for impeachment. Therefore, where the issue of admissibility can be resolved without reference to defendant's testimony at trial and is a major factor in his decision whether to testify, it is error to refuse an in-camera hearing on the admissibility of defendant's prior convictions.

Apodaca's motion *in limine* was premised on the need to make an informed decision whether to testify. Ordinarily, the rule in *Salazar, supra,* as modified by *Shoffner, supra,* would require that this case be remanded to determine whether evidence of one or both of the convictions would have been admissible for impeachment purposes. If both would not have been admissible, reversal of the conviction and a new trial would be necessary to allow Apodaca freely to exercise his right to testify. Here, defendant elected not to testify. In light of

the substance of his motion *in limine,* we can assume the decision was because of fear of impeachment by this evidence. Thus, it follows, if either prior conviction would have been admissible for impeachment, his decision would have been the same and he would not have been prejudiced by the failure to rule on the motion. *See Shoffner, supra.*

■ In this case, there is no need to remand the cause for a hearing on admissibility. In *Salazar, supra,* admissibility was dependent on a finding of fact. Here, in contrast, admissibility is dependent on a question of law: whether Apodaca's juvenile and military convictions are "felony convictions" within the meaning of § 13–90–101, C.R.S.1973. Thus, we may rule on the question.

■ Initially, we note that the court in effect did rule that the juvenile adjudication could not be used for impeachment purposes when it stated the witnesses by whom proof thereof was to be adduced could not testify. In any event, a juvenile adjudication is not a criminal proceeding, *People ex rel. Terrell v. District Court,* 164 Colo. 437, 435 P.2d 763 (1967), and is clearly beyond the scope of the statute.

The question of the use of evidence of a military conviction for impeachment purposes has not previously been addressed in Colorado. *Colo. Const.* Art. XVIII, Sec. 4 defines "felony" "to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other." *See also Smalley v. People,* 134 Colo. 360, 304 P.2d 902 (1956). In *Lacey v. People,* 166 Colo. 152, 442 P.2d 402 (1968), the court held that whether a conviction by a sister state which did not have a "felony" classification was within the statute should be measured by the potential penalty.

■ When applied to a military conviction, a decision based on the place or duration of incarceration alone would not comport with the policy of limiting the use of

convictions to felonies. Use of a military conviction for being absent without leave was disapproved in *United States v. Tomaiolo,* 249 F.2d 683 (2d Cir.1957) on the theory that the conviction was for a breach of military discipline and not a felony. On the other hand, in *United States v. Cathey,* 591 F.2d 268 (5th Cir.1979), the court ruled that a military conviction for theft would have been admissible had the conviction not occurred sixteen years earlier. There, the court reasoned that the theft conviction was fundamentally different from a dishonorable discharge for failure to wear a uniform, the latter being inadmissible as only a violation of military discipline. We follow this distinction and hold that a military conviction for an offense that would be punishable as a felony under the law of Colorado is admissible for impeachment under § 13–90–101, C.R.S.1973.

■ The presentence investigation report included in the record shows that Apodaca was convicted of rape while a member of the United States Marine Corps and sentenced to the U.S. Disciplinary Barracks for a period of three years. Rape, *i.e.,* sexual assault, being a felony under the laws of Colorado, Apodaca could have been impeached by evidence of the military conviction had he testified. Hence, under the rationale in *Shoffner, supra,* the failure to rule on the motion *in limine* was harmless here, and thus, a new trial is not necessary.

## II.

Apodaca asserts error in the trial court's refusal to instruct the jury on the lesser included offense of attempted second-degree kidnapping and on the meaning of the asportation element of second-degree kidnapping. We find no error.

■ A defendant is entitled to an instruction on a lesser offense if there is a rational basis for the jury to acquit him of the greater offense but convict him of the lesser offense. *Graham v. People,* 199 Colo. 439, 610 P.2d 494 (1980). The issue is whether by his conduct Apodaca "seized and carried" the complainant within the meaning of § 18–3–302, C.R.S.1973 (1978 Repl.Vol. 8), or whether it was only a "substantial step" toward the commission of the offense. Section 18–2–101(1), C.R.S.1973 (1978 Repl.Vol. 8). Apodaca tendered an instruction that "seize and carry" means to transport a person for a substantial distance. Using this definition, he argues a jury could reasonably have acquitted him of the greater charge and found him guilty of the lesser charge. We disagree.

■ We find no support for Apodaca's gloss on the definition of seize and carry. His definition is apparently an abstract from a two-prong test requiring that the movement must be more than incidental to the underlying offense and that such movement must substantially increase the risk of harm to the victim. This test was used in *People v. Chatfield,* 199 Colo. 530, 612 P.2d 516 (1980) and *People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980), both involving first-degree kidnapping, § 18–3–301, C.R.S. 1973 (1978 Repl.Vol. 8). In first-degree kidnapping, the issue is whether the nature of the victim's movement establishes that the defendant seized and carried the victim from one place to another with the intent to force the victim to give up a thing of value to secure release.

■ But this test has never been adopted for second-degree kidnapping. In *Yescas v. People,* 197 Colo. 379, 593 P.2d 358 (1979), the victim was moved some 20 feet. To determine whether the defendant was properly convicted of second-degree kidnapping in addition to sexual assault, the court deemed significant only that the movement of the victim from a well-lighted place to a place of relative concealment increased the risk of harm above that involved in the underlying offense. It expressly refused to consider whether the movement was substantial or incidental.

In *Bridges, supra,* commenting on *Yescas,* the court stated that to satisfy the asporta-

tion element of second-degree kidnapping movement of the victim from one place to another was all that was necessary. We interpret this statement as the explanation for the court in *Yescas* not applying the two-prong test applicable in a first-degree kidnapping case to a second-degree kidnapping case. It demonstrates that movement for a "substantial" distance is not required.

Also, there was no error in the instruction submitted to the jury. The trial court instructed the jury on the elements of second-degree kidnapping. The requirements necessary to sustain the conviction were in plain English, and no further definition of seize and carry was necessary under the law. *See People v. Ortega,* 181 Colo. 223, 508 P.2d 784 (1973).

No minimum distance being required, the asportation element was satisfied by the movement of the victim from the road into the truck and by the truck's movement before the victim's escape. As this is by definition the completed crime of second-degree kidnapping, it is necessarily more than an attempt. And, because on the evidence presented there was no factual controversy, a jury could not have rationally acquitted defendant of second-degree kidnapping and yet found him guilty of attempted second-degree kidnapping. *Graham v. People, supra.*

### III.

■ Apodaca also challenges the sufficiency of the evidence to support his conviction for second-degree assault and second-degree kidnapping. We do not agree.

Apodaca argues there was no evidence of intent or attempt to cause bodily injury as required by § 18–3–203(1)(b), C.R.S.1973 (1978 Repl.Vol. 8). The complainant testified that he held a knife to her ribs and threatened to stab her. Although her injury occurred when she grabbed the knife, reasonable persons could infer both the intent and attempt from the evidence presented. Thus, a jury question was

presented. *See People v. Bennett,* 183 Colo. 125, 515 P.2d 466 (1973).

The judgment is affirmed.

COYTE and VAN CISE, JJ., concur.