Anthony Gilbert APODACA, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 83SC105.

Supreme Court of Colorado,
En Banc.

Dec. 16, 1985.

As Modified on Denial of Rehearing
Jan. 27, 1986.

David F. Vela, State Public Defender, Margaret L. O'Leary, Lyndy Ohneck, Michael J. Heher, Deputy State Public Defenders, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Dolores S. Atencio, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Apodaca*, 668 P.2d 941 (Colo.App.1982), which affirmed the conviction of the defendant, Anthony Gilbert Apodaca, for second degree kidnapping, second degree assault, felony menacing, and a crime of vio-

lence. The court of appeals held that the refusal of the trial court to timely rule on the defendant's motion to prohibit prosecutorial use of prior conviction evidence for impeachment purposes was harmless error, and also that the trial court properly rejected the defendant's tendered instruction on the lesser included offense of attempted second degree kidnapping. We conclude that the trial court impermissibly burdened the defendant's constitutional right to testify in his own defense by declining to rule on the constitutional admissibility of prior conviction evidence until such time as the defendant actually testified at trial and that such error cannot be deemed harmless under the present state of the record. We also conclude that, because there was no rational basis in the evidence for the jury to acquit the defendant of the completed crime of second degree kidnapping and still convict him of the lesser included offense of attempted second degree kidnapping, the trial court properly refused to instruct on the lesser included offense of attempted second degree kidnapping. We thus affirm in part and reverse in part, and we remand the case to the court of appeals with directions to return the case to the trial court for further proceedings.

## I.

The defendant was charged with second degree kidnapping,[1] second degree assault,[2] felony menacing,[3] and a crime of violence,[4] all of which were alleged to have been committed on June 1, 1980 in Huerfano County, Colorado. Prior to the commencement of jury selection, the defendant filed a motion requesting the trial court to rule on whether the prosecution could properly use two prior convictions for impeachment purposes in the event the defendant elected to testify at trial in his own defense. One of the asserted convictions was a 1974 delinquency adjudication, when the defendant was seventeen years old, and the other was a 1976 military conviction for rape, which resulted in a three-year sentence to the disciplinary barracks in Fort Leavenworth, Kansas, and a dishonorable discharge. The defendant claimed that a ruling on the admissibility of such evidence in advance of his trial testimony was essential to permit him to make a knowing, intelligent, and voluntary decision on whether to take the witness stand in his own defense. The defendant argued to the court that the military conviction did not qualify as a felony under section 13–90–101, 6 C.R.S. (1973), and that it was also obtained in violation of due process of law and was thus constitutionally inadmissible. Although the trial court indicated that it would not permit the prosecution to use the juvenile adjudication, it refused to rule on the admissibility of the military conviction in advance of the defendant's taking the witness stand in his own defense. The court stated that if the defendant did indeed testify at trial and if the district attorney sought to question the defendant about the military conviction, the court would then conduct an *in camera* hearing in order to determine whether the district attorney could use the military conviction to impeach the defendant.

The trial evidence established that on June 1, 1980, the defendant attended a wedding dance in Walsenburg, Colorado. Present at the dance was the female victim, with whom the defendant had been acquainted since high school. The defendant and the victim danced together and later played pool at a local tavern. The victim left the tavern alone and on foot shortly before 2:00 a.m. After she had walked approximately halfway to her home, the defendant drove up beside her in his pickup truck. He conversed with her for approximately ten minutes and offered her a ride home. When the victim refused the ride and began to walk away, the defendant stepped out of his truck and approached her on the sidewalk. He grabbed her

1. § 18–3–302(1), 8 C.R.S. (1978).

2. § 18–3–203(1)(b), 8 C.R.S. (1978).

3. § 18–3–206, 8 C.R.S. (1978).

4. § 16–11–309, 8 C.R.S. (1978).

around the neck and by the hair, placed a knife against her ribs, and threatened to stab her if she did not get into the truck.

The victim unsuccessfully attempted to take the knife from the defendant and received several deep cuts on the fingers of her left hand. When the defendant again ordered her into the truck, she entered the driver's side and moved over to the other side of the front seat as the defendant stepped in and closed the door. After the truck moved a short distance down the street, the victim opened the door next to her and jumped from the moving truck. As she left the truck, the defendant accelerated rapidly and drove away. As a result of her escape from the truck, she suffered injuries to her head, shoulder, and knee. The defendant was arrested a short time later in downtown Walsenburg while still in his pickup truck.

After the prosecution concluded its case, the defendant presented two witnesses. His first witness was a doctor who testified that the victim when last examined had no complaints about her left hand and that the hand appeared basically normal. The other witness was the defendant's brother, who testified that in his opinion both the defendant and the victim were intoxicated at the wedding dance. The defendant did not testify in his own defense.

At the conclusion of the evidence the defendant tendered an instruction on attempted second degree kidnapping as a lesser included offense of second degree kidnapping. The trial court refused the instruction. The jury returned guilty verdicts to second degree kidnapping, second degree assault, felony menacing, and a crime of violence. After denying the defendant's motion for a new trial, the court sentenced the defendant to concurrent terms of four years.

In affirming the convictions, the court of appeals held that, although it was error for the trial court to refuse to rule on the defendant's motion challenging the admissibility of prior conviction evidence for the purpose of impeachment, the error was harmless because the military conviction

for rape qualified as a "felony conviction" under section 13–90–101, 6 C.R.S. (1978), and thus would have been clearly admissible for impeachment purposes if the defendant had elected to testify at trial. The court of appeals also held that the trial court properly refused to instruct the jury on attempted second degree kidnapping, since there was no rational basis in the evidence for the jury to acquit the defendant of the greater inclusive offense of second degree kidnapping and yet still convict him of the lesser offense of attempted second degree kidnapping. We granted certiorari to consider the following two issues: (1) whether the trial court's refusal to rule, in advance of the defendant's decision to testify, on his motion to prohibit the prosecution from using the military conviction as impeachment evidence impermissibly burdened the defendant's constitutional right to testify in his own defense at trial; and (2) whether the trial court erred in refusing to instruct the jury on the lesser included offense of attempted second degree kidnapping.

## II.

We first address whether the trial court improperly burdened the defendant's right to testify in his own defense at trial when it refused to rule on the admissibility of the 1976 military conviction until such time as the district attorney sought to use the prior conviction for the purpose of impeaching the defendant. Acknowledging that the trial court erred in refusing to timely rule on the defendant's motion, the court of appeals nonetheless concluded that the error was harmless because the military conviction would indeed be admissible as impeachment evidence under section 13–90–101, 6 C.R.S. (1973), if the defendant had testified in his own defense. The court of appeals' conclusion of harmless error, however, proceeded from the unsupported assumption that the military conviction also satisfied the constitutional standards of admissibility applicable to prior conviction evidence. While we agree that the military conviction for rape constitutes a felony con-

viction under section 13–90–101, 6 C.R.S. (1973), there is nothing of record that provides an answer to the issue of constitutional admissibility. If the military conviction was not obtained in accordance with constitutional standards, it would not be admissible for the purpose of impeaching the defendant, thus rendering the trial court's failure to rule on the defendant's motion an impermissible burden on the defendant's right to testify. Because neither the trial court nor the court of appeals ruled on this aspect of the case, it is necessary to remand the case to the court of appeals with directions to return the case to the district court for a determination of whether the defendant's prior military conviction was constitutionally valid and thus admissible as impeachment evidence.[5]

### A.

■ Section 13–90–101, 6 C.R.S. (1973), states, as pertinent here, that "the conviction of a person for any felony may be shown for the purpose of affecting the credibility of such witness." A felony is defined by the Colorado Constitution as "any criminal offense punishable by death or imprisonment in the penitentiary, and none other." Colo. Const. art. XVIII, § 4. Military offenses, however, are not classified under the felony-misdemeanor nomenclature and include many acts that are uniquely related to the need for military discipline and would not be classified as criminal in a nonmilitary setting. Furthermore, military offenses are not punishable in a state penitentiary but in a military institution under the control of the armed forces or in a federal correctional institution. 10 U.S.C. § 858 (1983). In view of these distinctive characteristics of military offenses, we believe the question of whether a military conviction qualifies as a felony conviction under Colorado's impeachment statute should be resolved on the basis of the following two-part test: (1) whether the maximum penalty applicable to the military offense is substantially equivalent to the punishment reserved for a felony offense in Colorado; and (2) whether the same criminal conduct, if committed in Colorado, would be classified as a felony under Colorado law. *See, e.g., Henderson v. United States*, 202 F.2d 400 (6th Cir.1953); *Huber v. State*, 2 Md.App. 245, 234 A.2d 264 (1967); *People v. Lee*, 35 A.D.2d 542, 313 N.Y.S.2d 139 (1970); *see generally* Annot., 7 A.L.R. 4th 468 (1981).

■ Article 120 of the Uniform Code of Military Justice defines rape as an act of sexual intercourse with a female not the wife of the offender, and committed by force and without the victim's consent. 10 U.S.C. § 920(a) (1983). The statutory penalty for rape under this article is "death or such other imprisonment as a court-martial may direct." *Id.* Military courts have determined that the death sentencing authorized by Article 120 has been effectively nullified by the decision of the United States Supreme Court in *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), which invalidated a death sentence for rape as an excessive penalty in violation of the constitutional proscription against cruel and unusual punishment. *E.g., United States v. Clark*, 18 M.J. 775, 776 (N.M. C.M.R.1984); *United States v. Matthews*, 13 M.J. 501, 514–15 (A.C.M.R.1982), *sentence rev'd on other grounds*, 16 M.J. 354 (C.M.A.1983); *United States v. McRey-*

---

5. The court of appeals held that the trial court, in the course of declining to rule on the defendant's motion until such time as the prosecution sought to impeach the defendant at trial, correctly determined that the 1974 delinquency adjudication could not be used against the defendant for impeachment purposes. We agree with the court of appeals' resolution of this issue. A delinquency proceeding is not a criminal prosecution, and a delinquency adjudication does not constitute a felony conviction. *People ex rel. Terrell v. District Court*, 164 Colo. 437, 435 P.2d 763 (1967). In the absence of special circumstances not present here, such as when the admission of a delinquency adjudication might be essential to effectuate an accused's constitutional right to cross-examine a prosecution witness, *see, e.g., Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *People v. Bowman*, 669 P.2d 1369 (Colo.1983); *People v. Pate*, 625 P.2d 369 (Colo.1981), a delinquency adjudication is generally inadmissible for impeachment purposes.

*nolds,* 9 M.J. 881 (A.F.C.M.R.1980) (per curiam). While the effect of these decisions is to limit the maximum sentence for rape under Article 120 to life imprisonment, the maximum sentence of life imprisonment clearly satisfies the first component of the test adopted herein, in that life imprisonment is a penalty applicable for the most serious felonies in this state. § 18–1–105, 8 C.R.S. (1985 Supp.). Moreover, the offense of rape, if committed in Colorado, would constitute either the class 2 or class 3 felony of sexual assault in the first degree,[6] or the class 4 felony of sexual assault in the second degree,[7] thereby satisfying the second part of the test relating to classification. The defendant's military conviction for rape, therefore, qualified as a felony conviction within the intendment of section 13–90–101.

## B.

■ The fact that the defendant's military conviction qualified as a felony conviction under Colorado's impeachment statute, however, does not resolve the issue of whether the trial court's refusal to timely rule on the defendant's motion to prohibit the prosecution from impeaching him with such conviction impermissibly burdened his right to testify in his own defense at trial. It is to this question that we now turn.[8]

■ Under both the fourteenth amendment to the United States Constitution and article II, section 25 of the Colorado Constitution, a criminally accused has a due process right to testify in his own defense. *E.g., Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *People v. Curtis,* 681 P.2d 504 (Colo.1984); *People v. Myrick,* 638 P.2d 34 (Colo.1981). This right is fundamental, and the opportunity to decide to exercise it freely and without coercive influence is critical to the fairness of the trial itself. *Curtis,* 681 P.2d at 513–15.

---

**6.** Section 18–3–402(1), 8 C.R.S. (1973 & 1985 Supp.), defines sexual assault in the first degree to include the knowing infliction of sexual intercourse on the victim by causing submission of the victim through the actual application of physical force or physical violence. Sexual assault in the first degree is generally a class 3 felony, but is upgraded to a class 2 felony when the offender is physically aided by another person, the victim suffers serious bodily injury, or the offender uses a deadly weapon to cause submission of the victim. § 18–3–402(3), 8 C.R.S. (1973 & 1985 Supp.). When the trial occurred in this case, a class 3 felony was punishable by a presumptive penalty range of four to eight years, with a possible maximum penalty of sixteen years when extraordinary aggravating circumstances were present; and a class 2 felony was punishable by a presumptive penalty range of eight to twelve years, with a possible maximum penalty of twenty-four years when extraordinary aggravating circumstances were present. § 18–1–105(1)(a)(I) and (6), 8 C.R.S. (1985 Supp.).

**7.** Section 18–3–403(1)(a), 8 C.R.S. (1973), defines sexual assault in the second degree to include the knowing infliction of sexual intercourse on the victim "by any means other than those set forth in section 18–3–402 but of sufficient consequence reasonably calculated to cause submission against the victim's will." At the time of the defendant's trial, sexual assault in the second degree carried a presumptive penalty range of two to four years, with a possible maximum penalty of eight years when extraordinary aggravating circumstances existed. § 18–1–105(1)(a)(I) and (6), 8 C.R.S. (1985 Supp.).

**8.** The record shows that the defendant clearly challenged before the trial court the constitutional admissibility of the military conviction and sought an opportunity to develop an evidentiary record on that issue prior to making any decision on whether to take the witness stand at trial. The trial court, however, refused to entertain any evidence or argument on that issue until the prosecution actually sought to impeach the defendant with the prior conviction. In light of the fact that the defendant did not testify in his own defense at trial, it is quite understandable that, given the trial court's refusal to consider the defendant's challenge until after he took the witness stand at trial, the record is not developed as to the factual basis for the defendant's constitutional challenge. In addition to raising this issue before the trial court, the defendant also preserved the issue in the court of appeals. The third issue raised in· the brief filed with the court of appeals was as follows: Whether the trial court's refusal to rule on the admissibility of impeachment evidence constitutionally chilled Mr. Apodaca's right to testify in his own behalf. Approximately three pages of legal argument were devoted to that issue in the defendant's brief filed in the court of appeals.

A constitutional right may be said to be impermissibly burdened when there is some penalty imposed for exercising the right. *E.g., Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (permitting prosecutorial comment on an accused's election not to testify and allowing jury to draw adverse inference from accused's failure to testify impermissibly chill privilege against self-incrimination); *People v. Chavez,* 621 P.2d 1362, 1365 (Colo.1981), *cert. denied, sub nom. Colorado v. Chavez,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981) (requiring a defendant facing habitual criminal charges to choose between his constitutional right to testify in his own defense and his constitutional right to require the state to prove the elements of habitual criminality beyond a reasonable doubt creates an intolerable tension between two constitutional rights in violation of due process of law); *People v. Rosenthal,* 617 P.2d 551 (Colo.1980) (permitting unrestricted prosecutorial use at guilt trial of defendant's statements to psychiatrist retained by defendant in connection with insanity plea would directly clash with privilege aginst self-incrimination by requiring defendant to forego privilege at guilt trial in order to exercise right to plead and defend on grounds of insanity). *See also Myrick,* 638 P.2d 34 (recognizing that a defendant's right to testify may not be impermissibly "chilled" by imposing a penalty for exercising the right). An accused's right to testify in his own defense clearly includes the right to tell his story to the jury without being subjected to impeachment by a conviction obtained in violation of constitutional rights. *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972); *People v. Morrison,* 196 Colo. 319, 583 P.2d 924 (1978).

An accused, therefore, may seek the suppression of an unconstitutionally obtained conviction which the prosecution intends to use for the purpose of impeachment. This exclusionary principle finds its source in the fact that "unconstitutional convictions, in addition to being of suspect reliability, abridge the very charter from which the government draws its authority to prosecute anyone." *People v. Germany,* 674 P.2d 345, 349 (Colo.1983). We have thus prohibited the prosecution from making impeachment use of prior felony convictions obtained in violation of the accused's right to counsel as well as those entered in violation of due process of law stemming from a constitutionally defective plea of guilty. *See, e.g., People v. Meyers,* 617 P.2d 808 (Colo.1980).

A timely judicial ruling on a defendant's motion to suppress prior conviction evidence for the purpose of impeachment serves the vital function of providing the defendant with the meaningful opportunity to make the type of informed decision contemplated by the fundamental nature of the right to testify in one's own defense. The trial court deprived the defendant of that opportunity when it refused to rule on the defendant's motion to prohibit prosecutorial use of prior conviction evidence until such time as the prosecution actually sought to impeach the defendant with such evidence. In effect, the defendant could have testified in this case only by foregoing any opportunity to obtain in advance of actually taking the witness stand a judicial ruling on the most critical factor bearing on his decision whether to testify—that is, the constitutional admissibility of his prior conviction for the purpose of impeachment. We conclude that the trial court's refusal to timely rule on the defendant's motion impermissibly burdened the defendant's exercise of his constitutional right to testify in his own behalf, and that, given the present state of the record, we cannot treat this error as harmless.[9]

9. In *Luce v. United States,* — U.S. —, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the United States Supreme Court held that a defendant must actually testify at trial in order to preserve an appellate claim that the trial court erred in ruling that the defendant's prior conviction for possession of a controlled substance would be admissible for impeachment purposes under F.R.E. 609(a). The federal rule permits impeachment by convictions for crimes but only if the crime (1) was punishable by death or imprisonment in excess of one year and the court

### C.

■ Because we are satisfied that the defendant's decision not to testify stemmed from his lack of knowledge, in advance of such decision, as to whether his prior military conviction met the constitutional standards of admissibility applicable to prior conviction evidence, we believe that the appropriate disposition of the case is to return it to the trial court for a determination as to whether those standards were met. Since the defendant chose not to testify when he was uncertain whether the prior conviction was admissible, it is clear that he would not have testified if the trial court had determined in timely fashion that the rape conviction was obtained in accordance with constitutional standards. If the trial court makes this determination on remand, any possibility of prejudice resulting from the trial court's error in not timely ruling on the defendant's motion will have been adequately dispelled, since the constitutional admissibility of the prior conviction evidence would obviously have impelled the defendant to refrain from testifying at the earlier trial. Under these circumstances, the error at the earlier trial would be harmless beyond a reasonable doubt, *see, e.g., Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Ramirez v. People,* 682 P.2d 1181 (Colo.1984); *LeMasters v. People,* 678 P.2d 538 (Colo. 1984), thereby requiring the trial court to reinstate the judgment of conviction and sentence. If, however, the trial court determines that the prior rape conviction is constitutionally infirm and thus inadmissible for impeachment purposes, a new trial will be required, since in that instance there can be no question that the defendant suffered prejudice at the first trial by reason of being deprived of his opportunity to take the witness stand without undergoing prosecutorial impeachment by means of a prior unconstitutionally obtained conviction.

At the hearing on remand the defendant will bear the burden of making out a prima facie showing that the prior conviction was constitutionally infirm. *E.g., People v. Shaver,* 630 P.2d 600 (Colo.1981); *Meyers,* 617 P.2d 808; *People v. Roybal,* 617 P.2d 800 (Colo.1980); *Morrison,* 196 Colo. 319, 583 P.2d 924. If the defendant is able to make such a showing, the prosecution must then establish by a preponderance of the evidence that the conviction was constitutionally obtained. *E.g., Shaver,* 630 P.2d 600; *People v. DeLeon,* 625 P.2d 1010 (Colo.1981); *Roybal,* 617 P.2d 800. The trial court should enter sufficient findings so as to permit a meaningful appellate review of its ruling.

### III.

■ We next consider the trial court's refusal to give the defendant's tendered instruction on the lesser included offense of attempted second degree kidnapping. A defendant is entitled to an instruction on a lesser included offense only if "there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 18–1–408(6), 8 C.R.S. (1978); *see People v. Aragon,* 653 P.2d 715 (Colo. 1982); *Graham v. People,* 199 Colo. 439, 610 P.2d 494 (1980); *People v. White,* 191 Colo. 353, 553 P.2d 68 (1976). Where the evidence is such that the defendant must either be guilty of the greater offense or not guilty of any criminal conduct at all, an instruction on a lesser included offense is inappropriate. *Sims v. People,* 177 Colo. 229, 493 P.2d 365 (1972); *Watts v. People,*

determines that the probative value of the conviction evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of punishment. The *Luce* case, however, did not involve a constitutional issue, and certiorari was granted only for the purpose of resolving a conflict among the various circuits on the issue on which certiorari was granted. The instant case, in contrast, clearly raises an issue of constitutional dimension—that is, whether the trial court's refusal to rule on the defendant's motion to prohibit prosecutorial use of prior conviction evidence until such time as the prosecution actually sought to impeach the defendant constituted an impermissible burden on the defendant's constitutional right to testify in his own defense. The Supreme Court's decision in *Luce,* therefore, is neither compelling nor applicable to the constitutional issue raised in this case.

195 Colo. 347, 411 P.2d 335 (1966). Thus, the defendant's entitlement to an instruction in this case on the lesser offense of attempted second degree kidnapping depends on the existence of a rational basis in the evidence to support a verdict acquitting him of second degree kidnapping but convicting him of the lesser offense.

 Section 18-3-302(1), 8 C.R.S. (1978), provides that "[a]ny person who knowingly, forcibly, or otherwise seizes and carries any person from one place to another, without [her] consent and without lawful justification, commits second degree kidnapping." The movement of the victim necessary to sustain a second degree kidnapping conviction need not be substantial. The "incidental movement" test, which requires that the movement must be more than incidental to the commission of some other underlying offense that is related to the kidnapping, applies only to first degree kidnapping and not to second degree kidnapping. *People v. Abbott*, 690 P.2d 1263 (Colo.1984); *People v. Bridges*, 199 Colo. 520, 612 P.2d 1110 (1980). The statutory definition of second degree kidnapping merely requires "movement of the victim from one place to another," *Abbott*, 690 P.2d at 1270, and this requirement is clearly satisfied when the movement itself, although short in distance, results in a demonstrable increase in risk of harm to the victim. *See Yescas v. People*, 197 Colo. 379, 593 P.2d 358 (1979). Attempted second degree kidnapping, in contrast to the completed crime of second degree kidnapping, is an inchoate crime which requires the same kind of culpability necessary for second degree kidnapping—*i.e.*, acting knowingly—and conduct that amounts to a substantial step toward the commission of the completed offense.[10] § 18-2-101(1), 8 C.R.S. (1978); *see People v. Lahr*, 200 Colo. 425, 615 P.2d 707 (1980).

 In this case the victim testified that the defendant forced her at knife-point into the pickup truck and that thereafter the truck moved a short distance down the street before she was able to escape. The defendant presented no evidence to controvert the victim's version of the crime. We are satisfied that the defendant's conduct in forcing the victim at knife-point from a public sidewalk to the inside of his truck and in restraining her while the truck moved a short distance down the street before she was able to escape is the very type of movement contemplated by the second degree kidnapping statute. The undisputed evidence, therefore, clearly established the completed crime of second degree kidnapping. There thus existed no rational basis for the jury to acquit the defendant of that crime but nonetheless convict him of the lesser included offense of attempted second degree kidnapping. Accordingly, the trial court did not err in refusing to submit to the jury the defendant's tendered instruction on the lesser offense of attempted second degree kidnapping.

The judgment of the court of appeals is affirmed in part and reversed in part, and the cause is remanded to that court with directions to return the case to the district court for further proceedings in accordance with the views herein expressed.

ERICKSON, J., concurs in part and dissents in part.

ERICKSON, Justice, concurring in part and dissenting in part:

The majority resolves as a matter of law the question of whether the defendant's 1976 conviction for rape by a military court qualifies as a felony conviction under the impeachment statute, section 13-90-101, 6 C.R.S. (1973). However, the majority remands the case to the trial court for a determination of whether the conviction

---

**10.** "A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." § 18-2-101(1), 8 C.R.S. (1978). Thus, in the context of second degree kidnapping, a substantial step means conduct that strongly corroborates the actor's purpose to forcibly or otherwise seize and carry away any person from one place to another without the person's consent and without lawful justification. *See* § 18-3-302(1), 8 C.R.S. (1978).

was constitutionally obtained. Because the defendant has failed to assert any reasons in this court, the court of appeals, or the trial court why the conviction is invalid and no offer of proof was made, I believe a remand is unnecessary and respectfully dissent to part II.C. of the majority opinion.

The defendant's motion in limine, in which he requested that the trial court determine the admissibility of any impeachment evidence to be used by the prosecution, did not allege any grounds to support a finding that the military conviction was constitutionally infirm. In seeking a ruling on the motion, defense counsel only alluded to the possibility that a military conviction does not satisfy constitutional standards:

I don't think that a military conviction, which is all they have got, is admissible in this case as a felony because it is not taken under the usual provisions of the Constitution with a jury of his peers and burden of proof beyond a reasonable doubt.

. . . .

Your Honor, what I'm alleging he has the burden of proof of showing this because he's the one that wants to use this kind of evidence. This is not a constitutional, appropriate conviction to use it against him as a felony. What I'm saying, even though there is good faith that he was convicted of a felony, it would be in violation of due process and equal protection to use that against him.

In his motion for a new trial, the defendant was no more specific. He merely alleged as error the trial court's refusal to rule on the motion in limine. Furthermore, nowhere in the defendant's briefs before the court of appeals or this court is there any further specification of facts or law to support the defendant's allegation that his military conviction was unconstitutionally obtained.

Constitutional safeguards enjoyed by the criminally accused in civilian trials are generally applicable in military courts. *United States v. Tempia*, 16 C.M.A. 629, 37 C.M.R. 249 (1967); E. Byrne, *Military Law* 10, 19–20 (3d ed. 1981); H. Moyer, *Justice and the Military* 238 (1972). With regard to the defendant's contentions, the Uniform Code of Military Justice (U.C.M.J.), adopted in 1951, provides that the accused is presumed innocent until his guilt is established beyond a reasonable doubt. 10 U.S.C. § 851(c)(1) (1983). Under the U.C.M.J., a military judge presides over the general court martial, and the members of the court martial serve the same function as jurors in civilian courts. *See* 10 U.S.C. §§ 825–26; H. Moyer, *Justice and the Military* 466–68 (1972). The defendant in this case has not alleged or established that his military conviction was in fact obtained in violation of his rights under the Uniform Code of Military Justice. He has only advanced the vague and amorphous proposition that military convictions cannot withstand constitutional scrutiny in civilian courts. This argument is plainly without merit. Accordingly, I would affirm the court of appeals and would not remand for a further hearing.