Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 7, 2022

## 2022 CO 6

**No. 20SC758, *Garcia v. People* — Instructions — Criminal Law — Right to a Trial by Jury.**

In this opinion, the supreme court reviews whether the trial court violated the defendant's right to be presumed innocent by providing a supplemental jury instruction that defined the phrase "seizes and carries," as used in the second degree kidnapping statute, § 18‑3‑302(1), C.R.S. (2021), as "any movement, however short in distance."  Because this instruction was an incorrect statement of the law allowed the jury to convict the defendant without finding that he seized the victim or moved the victim from one place to another, the error was not harmless, and the defendant's conviction cannot stand.

Accordingly, the judgment of the court of appeals is reversed.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

---

**2020 CO 6**

---

**Supreme Court Case No. 20SC758**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 18CA38

---

**Petitioner:**

Nicholas Leonel Garcia, Jr.,

v.

**Respondent:**

The People of the State of Colorado.

---

**Judgment Reversed**
*en banc*
February 7, 2022

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
Jud Lohnes, Deputy Public Defender
*Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Ellen Michaels, Senior Assistant Attorney General
*Denver, Colorado*

**JUSTICE BERKENKOTTER** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE HOOD, JUSTICE GABRIEL, JUSTICE HART**, and **JUSTICE SAMOUR** joined.

JUSTICE BERKENKOTTER delivered the Opinion of the Court.

¶1 We review a division of the court of appeals' split decision in *People v. Garcia*, No. 18CA38 (Aug. 6, 2020), affirming Nicholas Leonel Garcia, Jr.'s conviction for second degree kidnapping. In doing so, we consider whether the trial court erred by instructing the jury that the phrase "seizes and carries," as used in the second degree kidnapping statute, § 18-3-302(1), C.R.S. (2021), means "any movement, however short in distance." Because the trial court's instruction allowed the jury to convict Garcia without finding that he seized the victim or moved the victim from "one place to another," *id.*, as required by the statute, we hold that the trial court committed reversible error. Accordingly, we reverse the judgment of the division below with directions to remand to the trial court for a new trial.

## I. Facts and Procedural History

¶2 In the early morning hours on April 1, 2016, Daniel Troy Kaehne made a 911 call from a stranger's home in Denver, claiming that he had been abducted, robbed, and assaulted by a group of four men. That is one of the few facts about which Garcia and Kaehne agree.

¶3 When interviewed by the police, Kaehne described several different versions of the events that evening. Initially, he claimed he was abducted at gun- and knifepoint by four Black men who accosted him outside a casino in Blackhawk and forced him into their car. When he testified at trial, however, Kaehne told the

2

jury that he voluntarily left the casino with four men (only one of whom is Black) — Garcia, Mario Llanos-Citron, and Garcia's adult sons, Josiah and Gerald. Kaehne explained that when he was unable to locate a cemetery where they all planned to smoke marijuana together, the men became angry and robbed and assaulted him for wasting their time. One of the men, Llanos-Citron, who was sitting next to Kaehne in the back seat, put him in a headlock, and they forced him to ride with them to Denver. Once there, according to Kaehne, the car stopped in an alley, and the four men exited the car to discuss what they should do with him. Kaehne testified that he started honking the car's horn to get attention, and then he escaped. The men caught him and returned him to the car. Later, the men reentered the car and drove away. A few blocks later, while the car was still moving, Kaehne managed to open the car door and jump out. He ran to a nearby stranger's house and called the police.

¶4  Garcia painted a markedly different picture of the events that evening. Relying on the testimony of his two sons, Garcia argued that Kaehne lied about being kidnapped and robbed to cover up what really happened that night: a drug deal gone bad. Garcia claimed that after the group couldn't find the cemetery, Kaehne asked Garcia to purchase methamphetamine for him. Kaehne then willingly accompanied the group to Denver to buy meth. Once in Denver, they stopped so Garcia could purchase the drugs for Kaehne, but after Garcia gave

3

them to Kaehne, Kaehne quickly became agitated because he thought that Garcia shorted him. Kaehne then punched Garcia in the face. Gerald and Llanos-Citron joined the fight, and, after Josiah stopped the car, the fight continued in an alleyway. The group then left Kaehne in the alley.

¶5 The police eventually arrested the four men and charged them with second degree kidnapping, robbery, third degree assault, and menacing. Garcia and Llanos-Citron entered pleas of not guilty and exercised their right to a trial by jury. They were tried together as co-defendants with separate counsel.

¶6 Garcia's sons agreed to plead guilty to all counts except for the kidnapping charges. As part of their plea agreements, they stipulated to factual bases that largely mirrored the version of events that Kaehne testified to at trial. During the trial, however, both sons disavowed the stipulated factual bases and testified in a manner that was largely consistent with an earlier proffer Josiah had made to the District Attorney's Office and that largely corroborated Garcia's theory of the case.

¶7 After closing arguments, the jury deliberated for three hours before submitting a question to the court. The jury asked: "What are the parameters of kidnapping? Is it considered kidnapping if a person is put back in a car? Is it kidnapping if they are dumped and left behind?" The trial court asked counsel how they thought the court should respond. The three attorneys asked that the

4

court not provide further guidance but, instead, simply refer the jury back to the evidence presented, the elements of the law, or the jury instructions.

¶8 The trial court, however, felt bound by appellate court precedent, which requires a trial court to educate the jury if the jury indicates it is confused about the law. The court, relying on *People v. Bondsteel*, 2015 COA 165, ¶ 95, 442 P.3d 880, 898, and *People v. Rogers*, 220 P.3d 931, 936 (Colo. App. 2008), drafted the following response:

> Your question concerns the meaning of the phrase, "seized and carried any person from one place to another," which is element no. 3(a) of the elements of the crime of Second Degree Kidnapping. The phrase, "seizing and carrying" is defined as "any movement, however short in distance."

¶9 Llanos-Citron's defense counsel objected to the instruction, arguing that the instruction was an erroneous statement of the law and that the court should respond that the "parameters of kidnapping" were the elements of the crime, which had already been provided to the jury in its instructions. Additionally, Llanos-Citron's counsel asserted that, by giving the instruction, the court was improperly "express[ing] an opinion upon the factual matters that the jury should determine" and that the court was not answering the actual question that the jury asked. Garcia's counsel joined in the objection.

¶10 The trial court noted the attorneys' objections and responded: "It's simply a statement of the law, and I believe that this statement of the law is correct, based

5

on the authorities I have." The court then answered the jury's questions with its proposed supplemental instruction, and the jury convicted Garcia of all charges.

¶11 Garcia appealed his conviction for second degree kidnapping, arguing, as pertinent here, that the trial court erred in providing this supplemental instruction. Specifically, Garcia argued that the instruction was erroneous because it omitted both the requirement that the defendant seize the victim and the requirement that the defendant carry the victim "from one place to another" from the crime of second degree kidnapping. A split division of the court of appeals affirmed his conviction. *Garcia*, ¶ 25. Like the trial court, the majority relied on *Rogers* and *Bondsteel* to stand for the proposition that the definition of "seized and carried" was "any movement, however short in distance." *Id.* at ¶ 12.

¶12 Judge Brown saw things differently, concluding that the trial court's instruction was erroneous because it included an incomplete definition of "seized and carried" and because it did not include the statutory requirement that "the defendant moved the victim 'from place to place.'" *Id.* at ¶¶ 40–43 (Brown, J., concurring in part and dissenting in part). Accordingly, she would have reversed Garcia's conviction for second degree kidnapping and remanded for a new trial. *Id.* at ¶ 45.

¶13 Garcia petitioned this court for certiorari review, which we granted.[1]

## II. Analysis

¶14 We begin by outlining the applicable law and standards of review. Then we examine and compare the second degree kidnapping statute and the supplemental jury instruction to determine if the instruction contained a proper statement of the law. Because the trial court's instruction did not accurately define the elements of second degree kidnapping, we conclude by considering whether the errors were harmless beyond a reasonable doubt and determine that they were not.

## A. Applicable Law and Standards of Review

¶15 Both the United States Constitution and the Colorado Constitution guarantee criminal defendants the right to be presumed innocent until a jury finds that the prosecution has proven every element of the charged offense beyond a reasonable doubt. *Griego v. People*, 19 P.3d 1, 7 (Colo. 2001); *Martinez v. People*, 470 P.2d 26, 30 (Colo. 1970). To give this guarantee effect, we require trial courts

---

[1] We granted Garcia's petition for certiorari review of the following issue:

> Whether the division erred in upholding the trial court's supplemental jury instruction defining "seizes and carries," as that phrase is used in section 18-3-302(1), C.R.S. (2020), as "any movement, however short in distance."

to properly instruct juries on all of the statutory elements of the charged crimes. *Griego*, 19 P.3d at 7.

¶16    On review, we consider jury instructions de novo to determine if they are correct recitations of the law and "accurately inform[] the jury of the governing law." *Riley v. People*, 266 P.3d 1089, 1092 (Colo. 2011). We review not only whether the jury instructions faithfully track the law but also whether the instructions are confusing or may mislead the jury. *People v. Janes*, 982 P.2d 300, 303–04 (Colo. 1999). In order to evaluate whether jury instructions properly state the law or are misleading, we also must consider the criminal statutes themselves. We review issues of statutory interpretation de novo. *McCoy v. People*, 2019 CO 44, ¶ 37, 442 P.3d 379, 389.

¶17    "[O]ur primary purpose [when interpreting statutes] is to ascertain and give effect to the legislature's intent." *Id.* We do so by looking to the statutory language and "giving its words and phrases their plain and ordinary meanings." *Id.* Additionally, we read statutes "as a whole, giving consistent, harmonious, and sensible effect to all of [their] parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.* at ¶ 38, 442 P.3d at 389. If the statute is unambiguous, our work is done. *Id.* If, however, the statute can reasonably be interpreted in multiple ways, we may look to other aids of statutory construction. *Id.*

8

¶18 Assuming the jury instructions were correct statements of the law, we review a trial court's decision to give those instructions for an abuse of discretion. *Day v. Johnson*, 255 P.3d 1064, 1067 (Colo. 2011). Otherwise, if we determine that the jury instructions were incorrect or misleading, we will review the trial court's error under the constitutional harmless error standard as long as the objecting party properly preserved the issue, as Garcia did here.[2] *Griego*, 19 P.3d at 8; *see also Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119. If the instructions were incorrect or misleading, we will reverse a conviction unless the prosecution can prove that the error was harmless beyond a reasonable doubt—that is, that the error did not contribute to the conviction. *Hagos*, ¶ 11, 288 P.3d at 119. If there is even a "reasonable *possibility* that the error might have contributed to the conviction," we must reverse. *Id.* (quoting *Chapman v. California*, 386 U.S 18, 24 (1967) (alteration omitted)).

¶19 We now apply these principles to the facts before us.

---

[2] Though the People expressly conceded in their briefing before the division below that Garcia preserved the jury instruction issue, they now argue before this court that he failed to preserve the issue. We expressly and strongly disapproved of this practice just last year in *People v. Struckmeyer*, 2020 CO 76, ¶ 5, 474 P.3d 57, 58. It is unclear why, in light of this admonition, the People consider it appropriate to try to walk back their concession before the division. A prosecutor's ultimate goal is justice, which is not always synonymous with victory. *Domingo-Gomez v. People*, 125 P.3d 1043, 1049 (Colo. 2005).

## B. Application

¶20    The second degree kidnapping statute, section 18-3-302(1), reads: "Any person who knowingly seizes and carries any person from one place to another, without his consent and without lawful justification, commits second degree kidnapping." The plain language of the statute requires, as pertinent here, that the prosecution, when charging a defendant with second degree kidnapping, must convince the jury beyond a reasonable doubt that the defendant (1) seized the victim and (2) carried the victim "from one place to another." *Id.* Though we have discussed the carrying requirement, also known as the asportation element, of section 18-3-302(1) at length, *see, e.g.*, *People v. Harlan*, 8 P.3d 448, 476 (Colo. 2000), *overruled on other grounds by People v. Miller*, 113 P.3d 743, 749 (Colo. 2005); *Apodaca v. People*, 712 P.2d 467, 475 (Colo. 1985), we have not yet had the opportunity to discuss the seizure requirement in detail. Here, we examine the seizure and asportation requirements and conclude that the trial court's supplemental instruction was erroneous as to both. We then go on to consider the impact a grammatical error had on the accuracy of the supplemental instruction.

### 1. The Seizure Element

¶21    Recall that when the jury asked about the "parameters of kidnapping," the trial court instructed the jury that "[t]he phrase 'seizing and carrying' is defined as 'any movement, however short in distance.'" Garcia asserts that this instruction

10

allows a conviction even if the defendant has not seized the victim. More specifically, he asserts that the instruction lowers the bar for the prosecution because it makes "any movement" of the victim kidnapping. The People concede that the instruction omits the seizure requirement but contend the instruction is still accurate because the term "seizes" is necessarily subsumed within the word "carries." We are not persuaded.

¶22 As a starting point, we decline to read the statute in a way that renders the term "seize" superfluous, noting we must strive to give it meaning as the General Assembly intended. *McCoy*, ¶ 38, 442 P.3d at 389. We also cannot disregard the fact that the statute lists the term "seizes" and the term "carries" separately and connects them with the conjunctive "and," which denotes that they are distinct elements of the crime.

¶23 We evaluate the People's contention that the elements are not distinct by examining the specific meanings of these two terms in the context of the second degree kidnapping statute. Because the statute does not define the terms "seizes" or "carries," "we may consider a definition in a recognized dictionary." *Cowen v. People*, 2018 CO 96, ¶ 14, 431 P.3d 215, 218–19. Dictionaries define "seize" to mean "to take possession of" or "to take hold of." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*seize* [https://perma.cc/RGG5-8X6W]; *see also, e.g.*, *Seize*, Black's Law Dictionary (11th ed. 2019) (defining "seize"

11

as "[t]o place (someone) in possession"). "Possession," in turn, means "the act of having or taking into control." Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/*possession* [https://perma.cc/F3DU-VGRF]. The plain language of the second degree kidnapping statute, thus, requires that the defendant knowingly took possession of or had control over the victim.

¶24 Dictionaries define the term "carries" to denote movement or transportation. *See, e.g.*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/*carry* [https://perma.cc/Z87R-H2BT] (defining carry as "to move while supporting" and "to transfer from one place (such as a column) to another"). And while the term often implies possession, this is not always the case. For instance, if Ann bumps into or pushes Tomas, she has moved him, but she may or may not have had possession or control over him. Thus, the People's argument that the term "seizes" is necessarily subsumed within the word "carries" is unavailing.

¶25 And here, by completely omitting the concept of seizure, the trial court's instruction can be understood to mean that a defendant completes the act of "seizing and carrying" by any and every act that displaces another person without consent or lawful justification, regardless of whether the defendant exercised or took control over that person. That is an incorrect statement of the law.

12

¶26 Guided by this erroneous instruction, the jury could have convicted Garcia of second degree kidnapping even if it believed his sons' testimony suggesting that Garcia never had control over Kaehne. More specifically, the jury could have convicted Garcia even if it believed Kaehne voluntarily travelled to Denver and was pushed or dumped out of the car after he punched Garcia. Put another way, when the jury asked: "Is it kidnapping if [the victim is] dumped and left behind," the trial court's erroneous supplemental instruction effectively told the jury that they could answer this question "yes."

## 2. The Asportation Element

¶27 The supplemental instruction was also incorrect as to the asportation element because the trial court omitted half of the definition of asportation. As noted, the plain language of section 18-3-302(1) requires that the defendant (1) seized the victim and (2) carried the victim "from one place to another." The supplemental instruction omits "from one place to another." Garcia argues that the supplemental instruction accordingly allows a conviction even if the defendant does not carry the victim from one place to another. More specifically, he again asserts that the instruction makes "any movement" of the victim kidnapping. We agree that the supplemental instruction misstates the asportation element.

¶28 We carry out our duty to discern legislative intent through the plain language of the kidnapping statute by giving the phrase "from one place to

13

another" effect. In doing so, we, again, avoid reading the statute in a manner that would render the phrase superfluous. *See McCoy*, ¶ 38, 442 P.3d at 389. As "[w]e have consistently held[,] . . . the asportation element of second degree kidnapping is that the defendant moved the victim from one place to another." *Harlan*, 8 P.3d at 476–77. To be sure, "substantial movement of the victim is not required" to satisfy the asportation element. *People v. Fuller*, 791 P.2d 702, 706 (Colo. 1990). Rather, we have upheld convictions with even minimal movement, as long as that movement was "from one place to another," as required by the statute. *See, e.g.*, *Apodaca*, 712 P.2d at 475; *Yescas v. People*, 593 P.2d 358, 359–60 (Colo. 1979).

¶29　Certainly, evidence that the defendant moved a victim will often fulfill the requirement that the defendant also moved the victim from one place to another. *See, e.g.*, *People v. Abbott*, 690 P.2d 1263, 1270 (Colo. 1984) (explaining that movement of the victims from the front of a store to a trailer behind the store fulfilled the requirement of movement from one place to another). But proof that a defendant moved a victim does not *always* also constitute proof that the defendant moved the victim from one place to another. *See, e.g.*, *Harlan*, 8 P.3d at 477 (explaining that "[i]n some cases, the factual circumstances presented at trial do not make it clear whether the defendant moved the victim from one place to another," even when it is clear that the defendant did move the victim).

14

¶30     Again, this case illustrates the point because the erroneous supplemental instruction would have allowed the jury to convict Garcia—even if it believed his sons' testimony—simply because Kaehne somehow "moved, however short in distance" from inside the car to the alley. That is not second degree kidnapping.

### 3. The Grammar Problem

¶31     Finally, the supplemental instruction suffered from a significant grammatical error. In its effort to provide useful guidance to the jury, the trial court pared its definition—"any movement, however short in distance"—down to the point that it omits a subject (i.e., the person committing the seizing and the carrying) and an object (i.e., the person being seized and carried). As a result, the trial court's definition did not require either. It also included no verbs, even though it purports to explain the meaning of two verbs. The instruction was consequently misleading and confusing because, without a subject, object, or any verb, the jury may not have understood what actus reus was required.

¶32     Though a trial court has an affirmative obligation to give a supplemental jury instruction when a jury "*affirmatively indicates that it has a fundamental misunderstanding* of an instruction it has been given," *Leonardo v. People*, 728 P.2d 1252, 1255 (Colo. 1986) (emphasis added), trial courts must exercise caution in determining if a fundamental misunderstanding actually exists and, if so, take care to respond to the actual misunderstanding. An instruction that tracks the

15

language of the statute is presumed to be clear and understood by the jury. *Id.* at 1254–55.

¶33    The trial court's error with respect to both the seizure element and the asportation element was compounded here because it appears to have misapprehended the jury's question. The jury asked the trial court about the "parameters of kidnapping." The jury did not ask a question about a particular element, nor did it mention any specific word or phrase. And, even though the jury asked about the parameters of the *entire* crime of kidnapping, the trial court effectively instructed the jury to replace the phrase "seized and carried" in the elemental instruction with "any movement, however short in distance." Significantly, the jury was *not* instructed to use the supplemental instruction *in addition to* the elemental instruction.

¶34    We agree with trial counsel that under these circumstances it would have been appropriate for the trial court to simply refer the jury back to the elemental instruction for the crime of second degree kidnapping because that instruction described the parameters of the entire crime and, thus, appropriately responded to the question the jury actually asked.

¶35    For these reasons, we now hold that a trial court commits error when it presents the jury with a jury instruction that defines the phrase "seizes and carries," in the second degree kidnapping statute, § 18-3-302(1), as "any

16

movement, however short in distance." Such an instruction is impermissibly misleading because it constitutes a partial definition of asportation and eliminates the seizure requirement from the second degree kidnapping statute entirely. And, because—as used here—it includes no object, no subject, and no verb, the instruction also risks leading the jury to mistakenly believe the crime has no actus reus or to supply its own, incorrect, actus reus.

¶36 To the extent that *People v. Owens*, 97 P.3d 227, 237 (Colo. App. 2004); *Rogers*, 220 P.3d at 936–37; and *Bondsteel*, ¶¶ 109, 118, 442 P.2d at 900, 901, are contrary to this opinion, they are now overruled.

### 4. Harmlessness

¶37 Next, we turn to the question of harmlessness. Under the circumstances presented here, we cannot say that the prosecution has proven that any of these errors were harmless beyond a reasonable doubt. We begin by noting that the second degree kidnapping charge was hotly contested at trial, with both the prosecution and the defense presenting evidence in support of their markedly different theories of the case. And there is a reasonable possibility that the trial court's error resulted in Garcia's conviction on this charge.

¶38 First, the trial court's omission of the seizure requirement in the supplemental instruction was not constitutionally harmless. Without the seizure requirement, the jury could have convicted Garcia of second degree kidnapping

even if it believed his sons' testimony because it did not have to consider if Garcia had control over or possession of Kaehne when the fight moved from the car to the alley. And since the seizure element is not necessarily subsumed within the asportation element, the testimony that the fight moved from the car to the alley is not, as a matter of law, an admission that Garcia seized Kaehne. As noted, seizure requires a degree of control over a person that is greater than simply the force required to move that person. Here, because the instruction allowed the jury to convict Garcia without finding that he seized Kaehne, Garcia's conviction must be reversed.

¶39 Second, by providing only half of the definition of asportation, the trial court eliminated the prosecution's burden to prove beyond a reasonable doubt that Garcia moved Kaehne from one place to another. And, with an incomplete definition to guide it, the jury could have convicted Garcia of second degree kidnapping even if it believed his sons' testimony regarding how Kaehne moved from the car to the alley. Because of this, Garcia's conviction cannot stand.

¶40 Third, because the supplemental instruction contained no subject and no object, the jury could have erroneously concluded that Kaehne's movement, however small, *in and of itself*—without any consideration of Garcia's role in effecting that movement—was a sufficient basis for conviction. This is yet another reason the supplemental instruction can be read as improperly directing the jury

18

that "any movement" of the victim is kidnapping. This instruction is completely at odds with the second degree kidnapping statute and is an incorrect definition of the elements of the crime. It also relieves the prosecution of the burden of proving each element of the offense beyond a reasonable doubt. Because there is a reasonable possibility that this error, alone or in combination with the other errors, contributed to Garcia's conviction, the error was not harmless. Thus, by providing this instruction, the trial court violated Garcia's right to due process and right to a jury trial under the United States and Colorado constitutions.

## 5. Substantially Increased Risk of Harm

¶41 Finally, we hold that the trial court did not err when it defined the asportation element without referencing whether the movement "substantially increased the risk of harm to the victim." *Harlan*, 8 P.3d at 477. As we have noted before, and now reiterate, that standard is not an element of second degree kidnapping. *See Id.* at 477–78. There is no requirement that a defendant's movement of the victim must substantially increase the risk of harm to the victim in order for a jury to find the defendant guilty of second degree kidnapping. The statutory requirement is that the movement be from "one place to another." We do not, and in fact may not, "encroach upon the prerogative of the General Assembly to define the elements of an offense." *Id.* at 477. Because the standard is neither an element nor a legal definition of one of the statutory elements, a trial

19

court does not err when it tenders second degree kidnapping jury instructions without this language.

¶42    Substantial risk of harm to the victim is, however, a factor that appellate courts may consider when evaluating a challenge to the sufficiency of the evidence in a second degree kidnapping case. That is, when the issue is whether there was sufficient evidence to show that the victim was moved from one place to another, a reviewing court may consider whether that movement resulted in a "demonstrable increase in risk of harm to the victim." *Apodaca*, 712 P.2d at 475. The standard is, therefore, only one manner in which appellate courts may resolve the question of whether the prosecution has produced enough evidence to convince a reasonable juror that the defendant's movement of the victim was from one place to another. Because this inquiry is a legal question that we review de novo, *see McCoy*, ¶¶ 19–20, 442 P.3d at 385, the standard which we use to answer that question on appeal is not a necessary instruction for a jury sitting as finder of fact.

### III. Conclusion

¶43    Two of the cornerstones of our criminal justice system are that defendants are presumed innocent until found guilty by a jury of their peers and that the prosecution has the burden of proving each and every element of the offense beyond a reasonable doubt. Because the jury instruction allowed the jury to

convict Garcia of second degree kidnapping without first finding all of the statutory elements of the crime, Garcia's right to due process and right to a trial by jury were violated. Accordingly, we reverse the decision of the division below and remand the case for further proceedings consistent with this opinion.