The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Otis Lee BELL III,
Defendant–Appellant.

No. 88CA0084.

Colorado Court of Appeals,
Div. V.

July 19, 1990.

Rehearing Denied Aug. 30, 1990.

Certiorari Denied April 15, 1991.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert M. Russel, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Otis Lee Bell III, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree sexual assault, second degree kidnapping, first degree burglary, second degree burglary, and several other counts arising from the same incident. We affirm in part and reverse in part.

The defendant and two companions, Glenn Jones and Travis Colvin, were arrested in early morning darkness close to the site where they had abandoned their crashed, stolen car after being chased by police. The police were responding to an earlier emergency report of a burglary, robbery, and sexual assault in progress at a nearby residence. Three men had been involved in the incident, and clothing and other items on the men corresponded to descriptions given by the couple who had been attacked.

The couple described an intrusion by three men who interrupted their sleep at about 12:30 a.m. by insistently ringing their doorbell, then breaking down the door, and threatening the couple with a gun. One man (person C) stayed outside while the others entered the house.

Inside, one of the two intruders (person B) took the husband to a back bedroom in search of money. The other (person A), who had the gun, took the wife to the couch and sexually assaulted her. Person B returned the husband to the living room

where person A watched over both victims while person B searched the house. After giving B the gun with the request that he again take the husband to the back bedroom, A again sexually assaulted the wife. At moments when he was briefly left alone in the bedroom, the husband called the police.

The primary issue at defendant's trial was whether he was person A or person C. The prosecution conceded that it did not have sufficient evidence to prove that person C participated in or was even aware of the sexual assault of the wife or the kidnapping of the husband (taking him to the back bedroom) with the use of a deadly weapon.

Although the evidence consistently implicated Travis Colvin as person B, it showed some inconsistency as to the identities of A and C. At the preliminary hearing and motion to suppress (which all three suspects attended—their trials were later severed), the husband identified Glenn Jones as person A. However, the clothing found on Jones looked unfamiliar to the victims, and that found on the defendant matched the descriptions they provided concerning person A. As a sanction for violation of a sequestration order, the husband was not allowed to testify as to whom he would identify as A at the time of trial.

The jury found defendant guilty on all counts as person A, and the trial court entered judgment accordingly.

### I.

■ Defendant first contends that the trial court violated his right to present a defense by not allowing him to bring Glenn Jones into the courtroom as an aid to him in his cross-examination of the husband and as an aid to the jury in its comparison of his appearance with that of the defendant. Jones' presence was denied on the ground that it would prejudice Jones in his upcoming trial in giving the husband another opportunity to look at him. We agree that denying defendant the opportunity to present Jones was in error, but conclude that the error was harmless beyond a reasonable doubt.

■ The right of an accused to present evidence in his defense is a fundamental component of due process of law. U.S. Const., amends. VI, XIV; Colo. Const. art. II, §§ 16, 25; Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); People v. Pratt, 759 P.2d 676 (Colo.1988); People v. Kreiter, 782 P.2d 803 (Colo.App. 1988); see People v. Provonost, 773 P.2d 555 (Colo.1989). "The exclusion of criminal defense evidence undermines the central truthseeking aim of our criminal justice system ... because it deliberately distorts the record at the risk of misleading the jury into convicting an innocent person." Taylor v. Illinois, supra (Brennan, J., dissenting).

■ However, not all exclusions are of constitutional magnitude. Before an exclusion reaches such proportions, the accused must make a plausible showing of how the evidence would have been both material and favorable to his defense. U.S. v. Valenzuela–Bernal, 458 U.S. 858, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982). In addition, even exclusions of constitutional magnitude are not reversible error if they are harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); People v. Pratt, supra.

It is undisputed that identity was the key issue at trial and that the validity of the husband's prior identification of Jones as person A was material to that issue. Hence, the jury's comparison of Jones and the defendant's appearance was also material.

In addition, although the photographs and descriptions of Jones and defendant in the record portray them as quite similar, we are willing to assume for our analysis that the presentation of Jones' person could have been favorable to defendant. This assumption is supported by the fact that defendant sought to suppress the photographs and to admit only Jones' person for the jury's comparison, and by the acknowledgement of the trial court, which had seen Jones in prior hearings, that Jones' person would be the "the best evi-

dence" to cross-examine the husband on the credibility of his previous identifications. Consistent with such assumption, we conclude that the exclusion was of constitutional magnitude.

 One person's constitutional rights may not be eclipsed by non-constitutional prejudice to another. *See Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir.1980); *cf. People v. Harding*, 671 P.2d 975 (Colo.App.1983), aff'd 708 P.2d 1354 (Colo.1985). Although a person has the right under the Fifth Amendment not to speak on the ground that it may incriminate him, he has no constitutional right not to display his person. *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910); *LeBlanc v. People*, 161 Colo. 274, 421 P.2d 474 (1967).

Accordingly, it was impermissible for the trial court to sacrifice defendant's right to present his defense in favor of any right of Jones' to remain hidden from the husband. In any case, insofar as further exposure to the husband should turn out to create potential prejudice for Jones in his subsequent trial, the prosecution could then be restricted in its presentation of identification evidence by that victim. *See generally* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567 at 579–81 (1978). It was improper to impose the prejudice inherent in the situation on defendant.

 Having found a constitutional error, we must now determine whether that error was, nevertheless, harmless beyond a reasonable doubt. *See Chapman v. California, supra; Topping v. People*, 793 P.2d 1168 (Colo.1990).

The excluded evidence would have allowed defendant to cross-examine the husband concerning the similarities between Jones and defendant that he remembered from his prior exposure to them. In addition, it would have allowed the jury to compare the physical characteristics of the two suspects live, so as better to judge whether the husband could have been mistaken in his initial identifications.

The evidence presented to the jury on this question included a comparison of the suspect's physique and facial characteristics by the husband, descriptions of the men by the arresting officers, photographs of both men (ultimately admitted by stipulation), and defendant's appearance in the courtroom. All of this evidence illustrates that the men did, in fact, look quite similar, with Jones of a somewhat larger build. The situation is, thus, unlike the reversible error arising from exclusion of evidence of a person because of a huge discrepancy between the victim's description and the defendant himself. *E.g., State v. Sanders*, 691 S.W.2d 566 (Tenn.Crim.App.1984) (error to deny defendant opportunity to stand and display his height where victim described assailant as "her mother's height," 5 ft. 1 inch, and the defendant was about 6 ft. tall).

In addition, evidence of the defense embodied in the presentation of Jones was not entirely excluded. *See Honey v. People*, 713 P.2d 1300 (Colo.1986) (error in disallowing opinion evidence on complaining witness' lack of truthfulness was harmless beyond a reasonable doubt where defendant was allowed to discredit witness in other ways); *cf. People v. Green*, 38 Colo. App. 165, 553 P.2d 839 (1976) (to deny defendant the right to present *any* independent corroborative testimony on a material issue must be considered prejudicial error). As stated, photographs—including mug shots of both Jones and Bell taken immediately after arrest and a somewhat later larger photo showing Jones from just above the knees—were admitted. Defendant refers us to no part of the record in which it is alleged or suggested that the photographs are inaccurate or misleading. He argues only that they are not the "best evidence" of the men's similarities, particularly of their relative bulk.

Finally, the evidence against defendant was overwhelming. While the wife could not identify the facial characteristics of any of the robbers, she testified that she was "absolutely certain" in identifying the brown leather coat found on defendant when he was arrested shortly after the incident as the jacket worn by her assaul-

ter, person A. She also identified the brass zipper on defendant's dark pants as "exactly as I recall seeing" and believed defendant's shirt to be "very similar" to that of A. Conversely, the bright turquoise pants found on Jones were totally unfamiliar to her.

The husband also described person A's coat as brown and his shirt as similar to the one worn by defendant. Like his wife, he did not recognize Jones' turquoise pants.

In addition, the number and denominations of money found on defendant corresponded with those taken by person A from the wife's purse.

None of this evidence was contradicted.

Under these circumstances, we conclude that the trial court's error in excluding the person of Jones from the courtroom was harmless beyond a reasonable doubt. *See Key v. People,* 715 P.2d 319 (Colo.1986); *People v. Ellsworth,* 679 P.2d 112 (Colo. App.1983).

## II.

Defendant also contends that the trial court improperly restricted his cross-examination of the husband so as to violate his right to confront the witnesses against him. First, he contests the trial court's refusal to allow him to refer to the fact that the husband had compared photographs of Jones and the defendant under questioning by the district attorney immediately before he testified as to the similarities he remembered from seeing the men in prior hearings. Second, he challenges the court's refusal to allow him to cross-examine the husband with the help of the presence of Jones or his photograph. We find no error.

Although the right to confront and cross-examine witnesses is constitutionally guaranteed by the Sixth Amendment and Colo. Const. art. II, § 16, this "right is tempered ... by the trial court's authority to prohibit cross-examination on matters wholly irrelevant and immaterial to issues at trial. 'Unless the restriction of cross-examination is so severe as to constitute denial of that right, the extent to which the cross-exami-

nation should be allowed rests within the trial court's discretion.'" *People v. Loscutoff,* 661 P.2d 274 (Colo.1983).

Here, the trial court, in effect, determined that the husband's viewing of the photographs and the accompanying interrogation by the district attorney were irrelevant. Before viewing the photographs, the husband recalled, *in camera,* that Jones and Bell both had large chests, large shoulders, similar facial construction, about the same amount or lack of facial hair, and round eyes. After seeing the photographs while being questioned by the district attorney, the husband testified almost identically. The only variance was that "both had somewhat close hair." The court suggested that defendant could ask the husband about any influences on his comparison. Such a question may have laid a foundation for further examination, but defendant did not choose to pose it. In view of the lack of any substantial difference in the husband's pre- and post-*in camera* testimony, we cannot conclude that the proposed cross-examination was relevant or that the trial court abused its discretion in foreclosing it.

We have already determined that the error in excluding Jones from the courtroom was harmless under the Compulsory Process and Due Process clauses. For the same reasons, any error under the Confrontation Clause would also be harmless.

We fail to find any error in the trial court's refusal to allow defendant to cross-examine the husband with the use of a photograph of Jones. Use of the photographs was apparently disallowed because defendant did not want the photos admitted into evidence for use on direct examination by the district attorney, and the court wanted both parties "to play by the same rules." We cannot say that this determination was an abuse of discretion.

Moreover, to the extent that prohibiting use of the photos on cross-examination may have deprived the jury of the opportunity to appraise the distinguishing features of the two suspects, any prejudice therefrom was cured by the admission of

the photographs at a later stage in the trial.

## III.

■ Prior to trial, the trial court imposed a sequestration order prohibiting all witnesses from discussing their testimony with each other or anyone other than counsel for the duration of the trial. Subsequent to the order and before the trial, the prosecution provided the husband with a copy of the report on the incident by a police department detective. Included in the report was the statement that a gold Accutron watch, identified by the husband as his, had been found on defendant. The watch had been seized from the husband by person A.

The court ruled, and the People did not dispute, that revealing the report to the husband was a violation of the sequestration order. Defendant requested, as a sanction for the violation, that the trial court dismiss the case or, in the alternative, that it instruct the jury with a stipulation of fact that defendant did not enter the victims' home on the night the offenses occurred and could be convicted only as person C. Rejecting defendant's requests, the court entered a sanction excluding any evidence that the watch was found on defendant and limiting the husband's identification testimony to "his observations and not as to any information he received from [the report]."

Defendant contends that the trial court erred in not imposing the requested sanctions. We do not agree.

■ The appropriateness of sanctions depends on a three-factor analysis: (1) the involvement, or lack thereof, of a party or his counsel in the violation by the witness; (2) the witness' actions or state of mind in his or her violation and whether the violation was inadvertent or deliberate; and (3) the subject matter of the violation compared with the substance of the disobedient witness' testimony. *People v. P.R.G.*, 729 P.2d 380 (Colo.App.1986).

■ Both the decision to impose sanctions and the propriety thereof rest within the sound discretion of the trial court, *People v. P.R.G., supra,* and a trial court's failure to grant a mistrial is an abuse only if the defendant can show he has been prejudiced by virtue of the more limited sanctions imposed by the court. *See People v. Gomez,* 632 P.2d 586 (Colo.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

Here, the trial court implicitly found that the sequestration order violation was inadvertent on the part of both the prosecutor and the witness, but that the impact of the violation on the witness' testimony was sufficiently significant to require a sanction. The sanction imposed was fashioned to erase that impact to the extent possible. The sanctions requested by the defendant would have erased much more.

We disagree with defendant that the prejudice in not being able to show that the husband "has a present high degree of confidence that [defendant] wasn't in his home" required either of defendant's proposed sanctions. It is not obvious from the record that the husband's confidence would have persisted through trial even without the improper disclosure. In addition, the husband could and did testify that at the times he had been asked to identify person A, he had always designated Jones and not defendant. Identifications made nearer the time of the crime are generally the most credible.

Therefore, we conclude that the sanctions imposed by the trial court were not an abuse of discretion.

## IV.

■ Even if the trial court did not err in refusing to grant a mistrial for violation of the sequestration order, defendant asserts that the court erred in failing to grant one after the prosecution then violated the sanction imposed by asking the husband, on redirect examination, whether he was still as certain that Jones was the perpetrator of the sexual assaults as he was at the earlier hearings. Defense counsel immediately asked to approach the bench, and the witness did not answer the

question. After an *in camera* discussion, the trial court denied defendant's motion for a mistrial and, instead, instructed the jury to disregard the question. We disagree with defendant that the trial court's remedy was inadequate under the circumstances.

■■■ Declaration of a mistrial is the most drastic remedy for prejudicial conduct, *Massey v. People*, 649 P.2d 1070 (Colo.1982), and is appropriate only if the prejudice is so substantial that the effect on the jury cannot be remedied by lesser means. *Hamrick v. People*, 624 P.2d 1320 (Colo.1981). When the evidence is not so prejudicial that it is conceivable that, but for its exposure, the outcome may have been different, an instruction to disregard improper evidence can be adequate. *See People v. Ashley*, 687 P.2d 473 (Colo.App. 1984); cf. *People v. Goldsberry*, 181 Colo. 406, 509 P.2d 801 (1973). Also, the trial court's determination of a mistrial motion will not be disturbed on appeal absent a gross abuse of discretion prejudicing the defendant. *Massey v. People, supra.*

In light of the trial court's finding that the prosecution's question was not a deliberate violation of the prior sanction, cf. *People v. Oliver*, 745 P.2d 222 (Colo.1987); the trial court's immediate instruction to disregard the question, which we presume the jury to have followed, see *People v. Goff*, 187 Colo. 103, 530 P.2d 514 (1974); the speculative nature of the prejudice, *see People v. Ashley, supra;* and the substantial evidence of defendant's guilt, *see Massey v. People, supra;* we cannot conclude that the trial court's refusal to grant a mistrial was a gross abuse of discretion.

### V.

■■■ Defendant next asserts that defendant's conviction for second degree kidnapping should be vacated because of insufficient evidence and a faulty jury instruction. We agree with defendant's first argument and, therefore, do not address the second.

To support defendant's conviction for second degree kidnapping, the prosecution was required to prove beyond a reasonable doubt that defendant "seize[d] and carrie[d] any person from one place to another...." Section 18–3–302(1) C.R.S. (1989 Cum.Supp.). We agree with defendant that the movement alleged here—the husband's march from his living room to his bedroom at gunpoint—does not satisfy this element of asportation.

■■■ The movement of the victim necessary to sustain a second degree kidnapping conviction need not be substantial, *Apodaca v. People*, 712 P.2d 467 (Colo. 1985), and may be incidental to another crime. *People v. Powell*, 716 P.2d 1096 (Colo.1986). However, the prosecution must establish not only that the victim was moved, but also that the movement substantially increased the risk of harm to the victim. *People v. Fuller*, 791 P.2d 702 (Colo.1990). This requirement is useful in order to distinguish second degree kidnapping both from any crime it accompanies, such as assault, and from the crime of false imprisonment, from which it differs only in requiring movement. *People v. Arispe*, 191 Colo. 555, 555 P.2d 525 (1976); *see generally* Model Penal Code § 212.1 (Comments) (1980); Note, *A Rationale of the Law of Kidnapping*, 53 Colum.L.Rev. 540 (1953).

Here, not only was the movement of the victim within his own house insubstantial, there is also no evidence that it resulted in any increase in harm to the victim. There is no evidence that the bedroom was windowless and afforded no escape route. Moreover, the husband was not confined there at gunpoint, but rather was left there alone long enough to enable him to call the police. Finally, the record indicates that the length of his seizure and detention was no more than a few minutes.

Therefore, we conclude that the circumstances here do not, as a matter of law, satisfy the asportation requirement of second degree kidnapping and that defendant's conviction thereof must be reversed. *See Government of Virgin Islands v. Berry*, 604 F.2d 221 (3d Cir.1979); *Jefferson v. State*, 95 Nev. 577, 599 P.2d 1043 (1979); *People v. Caudillo*, 21 Cal.3d 562, 146 Cal. Rptr. 859, 580 P.2d 274 (1978) *cited in*

*People v. Bridges,* 199 Colo. 520, 612 P.2d 1110 (1980); *Friend v. State,* 385 So.2d 696 (Fla.App.1980); *cf. Sheriff v. Medberry,* 96 Nev. 202, 606 P.2d 181 (1980) (trier of fact could arguably find that moving victims to different part of prison, in which gunfire was being exchanged, increased their risk of harm).

Both parties agree that defendant's conviction of second degree burglary must be reversed.

Accordingly, defendant's convictions of second degree burglary and second degree kidnapping are reversed, and the cause is remanded for vacation of those convictions and their accompanying sentences. In all other respects, the judgment of conviction is affirmed.

CRISWELL and DUBOFSKY, JJ., concur.