23CA0638 Peo v Denny 02-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0638
El Paso County District Court No. 21CR3232
Honorable Jessica L. Curtis, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Lucky Denny,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE KUHN
Harris and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

---

Philip J. Weiser, Attorney General, Lauren Davison, Assistant Attorney General, Abigail M. Armstrong, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Joseph Chase, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Daniel Lucky Denny, appeals his convictions for second degree kidnapping, false imprisonment, obstruction of telephone service, third degree assault, and harassment.  We affirm.

## I.     Background

¶ 2     In June 2021, Denny and his then girlfriend, the victim, were alone in her home.  That night, Denny accused her of cheating on him, and an argument ensued.  It escalated to the point that the victim called 911 and tried to escape the home.  Denny stopped her as she got to the front door, grabbed her, and moved her across the living room to the ground before taking her to the bedroom and keeping her there.  The victim's home had an internal camera facing the living room and the front door.  This camera recorded audio and video of the majority of the incident, and the prosecution presented the recordings as evidence at trial.

¶ 3     The police responded to the 911 call.  During that visit, the victim did not report the incident between her and Denny.  She told the police that two other people were in the home and had an argument before she kicked them out.  However, a couple of days later, she contacted the police again, described the incident, and gave them her video and audio evidence.

1

¶ 4    The prosecution charged Denny with second degree kidnapping, obstruction of telephone or telegraph service, assault in the third degree, and harassment.  *See* § 18-3-302(1), C.R.S. 2024; § 18-9-306.5, C.R.S. 2024; § 18-3-204(1)(a), C.R.S. 2024; § 18-9-111(1)(a), C.R.S. 2024.  The prosecution also charged Denny with six counts as a habitual criminal under section 18-1.3-801, C.R.S. 2024.

¶ 5    During voir dire at his second trial,[1] several jurors expressed their feelings about domestic violence, shared their knowledge about domestic violence and the criminal justice system, and questioned their ability to be impartial.  These jurors were not empaneled, and the trial proceeded.

¶ 6    The jury returned a guilty verdict on all charges.  A couple of months after trial — at a conflict hearing — Denny, citing *People v. Joyce*, 68 P.3d 521 (Colo. App. 2002), and *People v. Viburg*, 2021 CO 81M, argued that because he was convicted of false imprisonment, a lesser included offense of second degree kidnapping, he was automatically acquitted of the greater offense of

---

[1] Denny's first trial ended in a mistrial due to an issue with the jury pool.

second degree kidnapping itself.  He also argued that the jury instructions were in error.

¶ 7     The court denied Denny's request and determined that any prejudice arising from the jury instruction issue would be cured at sentencing when the court would merge the two relevant convictions.  At the sentencing hearing, the court found that Denny had been convicted of four of the six habitual offender predicate counts and adjudged him a habitual criminal.  As promised, the court also merged the conviction for false imprisonment into that for second degree kidnapping.  The court sentenced Denny to a total of twenty-four years in prison.

## II.    Analysis

¶ 8     Denny contends that the trial court reversibly erred because (1) a mistrial was required given that multiple jurors' statements during voir dire prejudiced the jury pool, which was not cured; (2) there was insufficient evidence to support his conviction for second degree kidnapping; and (3) the jury instructions were incorrect.  We address each contention in turn.

A.    Whether Statements by Prospective Jurors During Voir Dire
Required the Trial Court to Declare a Mistrial

¶ 9    Denny contends that the trial court erred by (1) denying his request for a mistrial and (2) failing to sua sponte provide a curative instruction.  We disagree.

1.    Standard of Review and Preservation

¶ 10    Denny challenges the trial court's denial of his motions for mistrial.  A trial court has broad discretion to grant or deny a mistrial, and its decision will not be disturbed on appeal absent an abuse of discretion and resulting prejudice to the defendant.  *People v. Mersman*, 148 P.3d 199, 203 (Colo. App. 2006).  A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair.  *Id.*  When preserved, "[a]n error in a trial court's ruling on a motion for mistrial is subject to harmless error review."  *People v. Pernell*, 2014 COA 157, ¶ 26, *aff'd on other grounds*, 2018 CO 13.

¶ 11    Denny also contends the trial court erred by failing to sua sponte give a curative instruction.  Inherent in this argument is the acknowledgment that Denny did not raise this issue before the trial court or request a curative instruction.  Thus, this argument is

unpreserved. *See People v. Howard*, 89 P.3d 441, 446 (Colo. App. 2003).

¶ 12 "We review unpreserved claims of error for plain error." *People v. Van Meter*, 2018 COA 13, ¶ 26. "Plain error addresses error that is obvious and substantial and that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Acosta*, 2014 COA 82, ¶ 77 (quoting *People v. Herdman*, 2012 COA 89, ¶ 16).

## 2. Applicable Law

¶ 13 Throughout voir dire, one or more prospective jurors may make statements that are potentially prejudicial to the defendant. For example, a juror statement might "constitute an opinion concerning the guilt or innocence of the defendant[], . . . [or] relate to knowledge about the facts, parties, or witnesses involved in th[e] case." *Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 27 (quoting *United States v. Tegzes*, 715 F.2d 505, 508 (11th Cir. 1983)); *see also Mersman*, 148 P.3d at 203 ("During voir dire, the prospective juror stated that she knew G.D., [the defendant's] only witness. When asked in front of the entire panel about the

nature of her acquaintance with G.D., the prospective juror replied that her brother had known G.D. "through the drug scene.").

¶ 14 These types of statements may require the court to canvass the jury and give curative instructions. *See Mersman*, 148 P.3d at 203. And "[g]enerally, curative instructions issued after a prejudicial statement is made will remedy any harm caused by the statement."[2] *Id.*

### 3. The Potential Jurors' Statements

¶ 15 During voir dire, the trial court informed the jury that this case involved allegations of domestic violence and asked the jurors whether there was "anything about the nature of the case that would prevent any of [them] from being fair and impartial in deciding this case based only on the evidence?" Several prospective jurors, none of whom were empaneled, made statements about the cycle of domestic violence and their personal or work experience with domestic violence.

---

[2] Though "a mistrial is warranted . . . where the prejudice to the accused is too substantial to be remedied by other means," *People v. Mersman*, 148 P.3d 199, 203 (Colo. App. 2006), Denny's counsel conceded during oral argument that the comments in this case did not rise to that level.

¶ 16    Juror L informed the court of her thoughts:

- She had years of experience in counseling and court advocacy for survivors of domestic violence and her experience would make her impartiality questionable.

- Regarding domestic violence, "[t]he worst hurt no one ever sees.  It's the emotional abuse that no one ever sees.  That is the most destructive."

- She stated that domestic violence survivors act in ways that might seem counterintuitive to an observer.  But in response to the prosecutor's question about how those actions manifest, she said, "I think there [are] as many ways as there are people.  I think every survivor reacts and manages their situation differently.  So I'm not sure you can paint such a broad stroke on that one."

- "Most people don't go to court, and . . . in ten minutes, I could give everyone here the bullet points of the cycle of abuse that happens, because it's not ever a one-time thing and it never doesn't escalate."

¶ 17    Juror P likewise informed the court of his experiences:

- He agreed with Juror L.

- He was an EMT who answered many domestic violence calls and stated that survivors would often appear nonchalant after an assault.

¶ 18    Juror D also shared her experiences with the court:

- She had personal experience with domestic abuse.

- She didn't think she could be impartial or put that experience aside.

¶ 19    And as voir dire progressed Juror D became very emotional, and the court dismissed her and canvassed the jurors sitting near her.

¶ 20    When it was his turn, Juror T said,

> I honestly don't think I can be impartial. It's, you know, . . . just the way I am. . . . When I walked in the courtroom I already -- I was able to pick the crime and just -- you know, I honestly don't think I can be impartial. . . . I've been on both sides of the law. I've seen why people ask for jury trials. I've seen -- and I don't know -- just from where I've been years ago, I don't know one jury trial where they were actually innocent. They were just trying to find a loophole.

¶ 21    When the court asked whether he could afford Denny the presumption of innocence, Juror T replied, "I really don't. Like I

said, I walked in the courtroom and I thought of two charges. I was right with one."

¶ 22    Later during voir dire, when the prosecution returned to question Juror T again, he said,

> Like I say, when I walked in the courtroom, I looked at the defense and I already picked out what crime it was. And in my -- you know, I was raised around domestic violence. I've been convicted of domestic violence. I've seen it. It just doesn't happen one time. It just doesn't, boom, wind up in a courtroom. . . . Am I free to say what I feel?

¶ 23    The court instructed the prosecutor to move on before Juror T made additional statements.

### 4.    The Trial Court's Lack of a Sua Sponte Curative Instruction is Not Plain Error

¶ 24    Denny argues in his briefing that a mistrial was warranted because during voir dire, the prospective jurors made comments that prejudiced the remaining jurors and constituted improper expert testimony.[3] However, he also agrees that a mistrial was not

---

[3] The People contend that Denny did not preserve his argument regarding some, but not all, of the prospective jurors. We decline to address the two groups of prospective jurors separately because Denny's challenge fails regardless of preservation.

*required* in this case and that the prejudice could have been cured through canvassing or a limiting instruction.

¶ 25    Denny's primary complaint is that several prospective jurors, none of whom were empaneled, made statements about the cycle of domestic violence and their personal or work experience with domestic violence.  For example, Juror L's statements touched on unseen emotional abuse and stated that domestic violence is "not ever a one-time thing and it never doesn't escalate."  Additionally, Denny's attorney told the trial court that Juror D became emotional and "sa[id] things like 'Mr. Denny doesn't have a chance at trial.'"

¶ 26    "When a prospective juror makes a potentially prejudicial statement during voir dire, the trial court may issue a curative instruction; canvass the jury; or declare a mistrial."  *Vititoe*, ¶ 20 (citing *Mersman*, 148 P.3d at 203-04).  Denny acknowledges that the jurors' statements were not so prejudicial that they could not be cured through canvassing and curative instructions.  Instead, he contends that a mistrial was necessary only because the court failed to adequately canvass the jury or give any instructions.  But "a mistrial is the most drastic of remedies."  *People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984).  And "a mistrial is only warranted

where the prejudice to the accused is too substantial to be remedied by other means." *Id.*

¶ 27 These other means were available and, in fact, utilized when the court canvassed the jurors sitting near Juror D after her statements were brought to its attention. After completing its canvass, the trial court found that Juror D's emotional reaction, and alleged statement regarding guilt, did not have an impact on the jurors near her.

¶ 28 True, the trial court did not canvass or give curative instructions after comments by other jurors, such as Juror L. But these are remedies that Denny had to request. *See Mersman*, 148 P.3d at 204 (concluding a trial court did not commit plain error by not sua sponte giving a curative instruction or canvassing the jurors). He did not do so.

¶ 29 Thus, there were other means that could have remedied any prejudice caused by the prospective jurors' statements. Accordingly, we discern no abuse of discretion in the trial court's denial of Denny's motion for mistrial. *See id.* And because "a trial court does not commit plain error if it does not give a curative instruction sua sponte," *id.* at 203, the trial court did not plainly err

by not sua sponte giving such an instruction here.  *See also People v. Valencia-Alvarez*, 101 P.3d 1112, 1117 (Colo. App. 2004); *People v. Ned*, 923 P.2d 271, 275-76 (Colo. App. 1996); *People v. Pennese*, 830 P.2d 1085, 1089 (Colo. App. 1991).

### B. Whether There is Sufficient Evidence to Support Denny's Conviction for Second Degree Kidnapping

¶ 30     Denny next contends that the prosecution failed to present sufficient evidence to sustain his conviction for second degree kidnapping.  We disagree.

### 1. Applicable Law and Standard of Review

¶ 31     "[T]he prosecution, when charging a defendant with second degree kidnapping, must convince the jury beyond a reasonable doubt that the defendant (1) seized the victim and (2) carried the victim 'from one place to another.'"  *Garcia v. People*, 2022 CO 6, ¶ 20 (quoting § 18-3-302(1), C.R.S. 2021).[4]

---

[4] Denny's actions occurred before the second degree kidnapping statute was amended in 2023.  We apply the version of the statute in effect at the time of his actions.  *See People v. Di Asio*, 2022 COA 140, ¶ 15 ("Absent express legislative intent to the contrary, we presume a statute only operates prospectively, meaning it solely applies to events occurring after its effective date.").  As relevant here, increasing an individual's risk of harm was not an element of second degree kidnapping at the time of Denny's offense.  *Compare* § 18-3-302(1), C.R.S. 2022, *with* § 18-3-302(1), C.R.S. 2024.

¶ 32     We review the record de novo to determine whether the prosecution presented sufficient evidence to sustain a conviction. *Maestas v. People*, 2019 CO 45, ¶ 13.  In doing so, we employ a substantial evidence test, asking "whether the evidence, 'viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.'"  *Gorostieta v. People*, 2022 CO 41, ¶ 16 (quoting *People v. Harrison*, 2020 CO 57, ¶ 32).  "[W]e must 'give the prosecution the benefit of every reasonable inference which might be fairly drawn from the evidence.'  It does not matter that we might have reached a different conclusion were we the triers of fact."  *Id.* at ¶ 17 (quoting *Harrison*, ¶ 32).

## 2.    There is Sufficient Evidence to Support the Kidnapping Conviction

¶ 33     Denny argues that the prosecution failed to prove the kidnapping charge because he did not seize and carry the victim; alternatively, even if he did seize and carry her, he argues that the movement was not from one place to another.

13

¶ 34    The prosecution presented the jury with video and audio evidence of the incident — taken from the camera inside the home — and testimony from the responding officers and the victim. Viewing this evidence in the light most favorable to the prosecution and giving the prosecution the benefit of every reasonable inference that might be fairly drawn from it, *see Gorostieta*, ¶¶ 16-17, the evidence supports the jury's determination.

¶ 35    First, the video recording includes audio of Denny and the victim arguing off camera about alleged infidelity. The two argue as they walk into frame, across the living room, and then move off camera again into the kitchen. In the kitchen, the victim denies the infidelity and yells at him to let her out of the kitchen area, to which he replies, "You want to fuck with me . . . , stop it, you're not going nowhere."

¶ 36    The victim makes a phone call, and Denny asks who she is calling before realizing that it is 911. She then moves back into the living room, phone in hand, and hurries toward the front door of the residence. Denny chases after her. Just as the victim reaches the door to escape, he grabs her from behind, dragging her away from the door and across the room while she yells, "Let me go!" He then

tackles her to the floor on the other side of the living room, grabs her cell phone out of her hands, and keeps it from her.

¶ 37 The victim starts to crawl away from him and out of the living room, but Denny quickly follows, appearing to grab her, while she repeats, "Let me go," her voice escalating toward screams. At trial, the victim testified that after she tried to crawl away, Denny "grabbed [her] again and took [her] into the bedroom and held [her] on the floor up against the back of the bed."

¶ 38 The evidence presented to the jury supports a finding that Denny seized the victim when he grabbed her, dragged her from the door, and tackled her to the ground before grabbing her again. *See Garcia*, ¶ 23 (defining "seize" as "to take possession of" or "to take hold of" and defining "possession" as "the act of having or taking into control" before determining that second degree kidnapping statute requires that a "defendant knowingly took possession of or had control over the victim") (citations omitted).

¶ 39 Further, the evidence presented supports a finding that the asportation element was satisfied — that Denny carried the victim from one place to another. Denny moved the victim from one place to another when he dragged her away from the door, cutting off her

15

means of escape, and across the living room, where he tackled her to the floor — placing his body between her and the door — before moving her into the bedroom and containing her there.

¶ 40     Relying on *People v. Bell*, 809 P.2d 1026, 1033 (Colo. App. 1990), Denny argues that because this was a movement within a home, it was insubstantial and cannot support a kidnapping charge.[5]  But *Bell* does not support Denny's argument.

¶ 41     The *Bell* division observed that "[t]he movement of the victim necessary to sustain a second degree kidnapping conviction *need not* be substantial."  *Id.* (emphasis added).  True, in concluding that the prosecution failed to present sufficient evidence supporting the asportation element of the charge, the division also observed that the movement of the victim within his own house was insubstantial under the facts of that case.  *Id.*  But the division did not create a

---

[5] When *People v. Bell*, 809 P.2d 1026, 1033 (Colo. App. 1990), was decided, the asportation element required a showing of "a demonstrable increase in risk of harm to the victim."  *Apodaca v. People*, 712 P.2d 467, 475 (Colo. 1985).  At the time of Denny's actions and trial, however, an increase in the risk of harm was not a required finding but instead a factor that may be considered in reviewing a sufficiency of the evidence challenge.  *See Garcia v. People*, 2022 CO 6, ¶ 42.

blanket rule that movement within a home can never be substantial or that it cannot support a kidnapping charge. *Id.*

¶ 42　Further, the supreme court has made this point explicitly. In *Garcia,* the court addressed whether a trial court erred by not including whether movement "substantially increased the risk of harm to the victim" in a jury instruction. *Id.* at ¶ 41. The court said, "As we have noted before, and now reiterate, that standard is not an element of second degree kidnapping." *Id.*[6] Instead, it is "a factor that appellate courts may consider when evaluating a challenge to the sufficiency of the evidence in a second degree kidnapping case." *Id.* at ¶ 42. That is, "when the issue is whether there was sufficient evidence to show that the victim was moved from one place to another, a reviewing court may consider whether that movement resulted in a 'demonstrable increase in risk of harm to the victim.'" *Id.* (quoting *Apodaca v. People,* 712 P.2d 467, 475 (Colo. 1985)).

---

[6] We note that after the supreme court issued *Garcia,* the General Assembly amended the second degree kidnapping statute to include "increases the risk of harm" as an element of the crime. *See* § 18-3-302(1), C.R.S. 2024; Ch. 298, sec. 6, § 18-3-302, 2023 Colo. Sess. Laws 1784. But as we stated above, that amendment does not apply to Denny's case.

¶ 43    The video and testimonial evidence presented to the jury paints a clear picture here.  Denny dragged the victim away from the front door — her clear means of escape — before tackling her and taking her phone.  He then moved her to the bedroom, where he held her down, trapping her inside.  His actions prevented her from escaping and calling for help.  This increased the victim's risk of harm and supports a finding of asportation.  *Cf. Bell*, 809 P.2d at 1033 (determining that the risk of harm was not substantially increased when a victim was moved to a room with an escape route, left alone, and left with a phone to dial 911).

¶ 44    We conclude that a reasonable juror could find on this record that Denny seized and carried the victim from one place to another, supporting his conviction for second degree kidnapping.  Thus, Denny's sufficiency challenge fails.

C.    Whether the Jury Instructions Require Reversal

¶ 45    Denny contends that the trial court erred when it included the elemental instruction on false imprisonment, a lesser included offense of second degree kidnapping, but didn't instruct the jury that a defendant cannot be convicted of both a greater and lesser included offense.  We perceive no reversible error.

18

### 1. Standard of Review and Applicable Law

¶ 46 We review jury instructions de novo to determine whether, as a whole, they accurately informed the jury of the governing law. *Riley v. People*, 266 P.3d 1089, 1092-93 (Colo. 2011). If we determine that an elemental jury instruction was incorrect or misleading, we will review the error under the constitutional harmless error standard as long as the objecting party properly preserved the issue. *See Garcia*, ¶ 18. However, "[w]hen a defendant fails to object to a trial court's jury instructions, the instructions are reviewed for plain error." *Hoggard v. People*, 2020 CO 54, ¶ 13. An error is plain when it is "both obvious and substantial." *Id.* An error is substantial when it "so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (quoting *People v. Weinreich*, 119 P.3d 1073, 1078 (Colo. 2005)).

¶ 47 "Waiver occurs when a party intentionally relinquishes a known right." *People v. Geisick*, 2016 COA 113, ¶ 16. Put another way, a party waives arguments "[w]hen [the] party specifically removes issues from a trial court's consideration." *Id.*

¶ 48 The doctrine of invited error prevents a party from complaining on appeal of an error that the party has invited or injected into the case; the party must abide the consequences of their acts. *People v. Rediger*, 2018 CO 32, ¶ 34. Put in the context before us, "under the invited error doctrine, we will not review alleged errors in jury instructions drafted and tendered by the now objecting party." *Day v. Johnson*, 255 P.3d 1064, 1067-68 (Colo. 2011).

2. Preservation, Waiver, and Invited Error

¶ 49 The People argue that Denny failed to preserve, waived, or invited any error arising from this issue. We agree that this issue is not preserved but disagree that it was waived or invited.

¶ 50 "[T]he 'purpose of an objection is to provide the court with an opportunity to cure the defect at a time when the error may readily be corrected.'" *Forgette v. People*, 2023 CO 4, ¶ 22 (quoting *People v. Jimenez*, 434 N.Y.S.2d 251, 252 (App. Div. 1981)). A defendant doesn't preserve an objection to the trial court's inadvertent omission of a jury instruction unless the defendant timely objects, affording the court an opportunity to remedy the omission. *See id.* (citing *Jimenez*, 434 N.Y.S.2d at 252).

¶ 51    At the close of the trial, the court accepted Denny's proposed jury instruction on false imprisonment. After the jury rendered its verdict and was excused, Denny's counsel stated that she believed false imprisonment was a lesser included offense of second degree kidnapping, to which the prosecution incorrectly disagreed. The court said that it would address this issue at sentencing.

¶ 52    Approximately two months later, the court held a conflict hearing where Denny, himself, objected to the fact that there was no jury instruction that a defendant couldn't be convicted of both a greater and lesser included offense.

¶ 53    This objection, raised for the first time at the conflict hearing, came two months too late. By failing to object before the end of his trial, Denny did not raise a timely objection that would have afforded the court an opportunity to remedy the omission. *See Forgette*, ¶ 22. Thus, this issue is unpreserved, and we review it for plain error. *See Hoggard*, ¶ 13.

¶ 54    Conversely, we do not agree that this issue was waived or that error was invited. The People argue that defense counsel was aware all along that false imprisonment was a lesser included offense and

21

made a strategic choice not to contemporaneously raise the issue. We first address waiver before turning to invited error.

¶ 55    Waiver is an intentional act.  *See Rediger*, ¶ 39.  "We 'do not presume acquiescence in the loss of fundamental constitutional rights, and therefore indulge every reasonable presumption against waiver.'"  *Id.* (quoting *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984)).  During the conflict hearing, Denny testified that at trial, he asked his counsel about an instruction regarding false imprisonment as a lesser included offense and that his counsel told him that "false imprisonment [was] a [lesser] non-included offense." However, at the conflict hearing, defense counsel said, "I agree with Mr. Denny that false imprisonment is a lesser included offense.  I did not think it was ripe to make that argument until sentencing."

¶ 56    Denny's counsel's statements do not reflect a knowing or intentional relinquishment of the right to request the omitted jury instruction.  Regardless of whether counsel believed that false imprisonment was a lesser included offense or that the issue was not yet ripe, we see little strategic advantage in omitting the instruction.  As the People note on appeal, defense counsel's closing argument focused on why the jury, if it chose to convict on

22

anything, should only convict on false imprisonment. The omitted instruction would have only strengthened this argument. Under these circumstances, the failure to request the instruction was an omission or oversight. *See People v. Gross*, 2012 CO 60M, ¶ 16 (noting that counsel's failure to request a jury instruction where there was no strategic advantage "was not a strategic decision but rather was an oversight or inadvertent omission"). Thus, this issue was not waived.

¶ 57    Likewise, "[i]nvited error is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight." *Rediger*, ¶ 34. The invited error doctrine is inapplicable here for the same reasons the issue was not waived.

¶ 58    We now turn to the merits of Denny's instructional challenge, reviewing for plain error.

### 3. The Lack of Additional Jury Instruction Didn't Undermine the Fundamental Fairness of Denny's Trial

¶ 59    It is settled that "false imprisonment is a lesser included offense of second degree kidnapping." *Joyce*, 68 P.3d at 525; *see also People v. Williams*, 736 P.2d 1229, 1232 (Colo. App. 1986); *People v. Arispe*, 555 P.2d 525, 527 (Colo. 1976). "And a defendant

cannot 'be made to suffer simultaneous convictions for greater and lesser included offenses.'" *Viburg*, ¶ 21 (quoting *People v. Rock*, 2017 CO 84, ¶ 11).

¶ 60 Denny argues, citing *Viburg*, that had the jury been properly instructed, the jurors would have "known to consider the charges together" and they would not have convicted him on both charges. Further, he asserts that it is speculative to assume that they would have reached the same outcome.[7] Denny contends that because there was not clear evidence of kidnapping and because the jury asked the trial court about the difference between the two charges, reversal is required. We are not persuaded.

¶ 61 Denny's argument that the jury would have only convicted of the lesser included charge if it had been instructed to pick between

---

[7] We note that the facts and criminal charges before us are distinct from those in *People v. Viburg*, where the supreme court considered whether "double jeopardy bar[red the defendant's] retrial for felony DUI because he already [stood] convicted of a lesser included offense." 2021 CO 81M, ¶ 20. However, here we consider whether — without an instruction to the contrary — a jury's conviction of both a greater and lesser included offense undermined the fundamental fairness of Denny's trial. *Viburg*'s statement that "a conviction of a lesser included offense would generally mean an acquittal on the greater" is inapplicable to our precise factual scenario. *Id.* at ¶ 21.

that charge and second degree kidnapping is speculative at best. The jury convicted Denny beyond a reasonable doubt of all elements of both charged crimes. It was properly instructed on the burden of proof and the elements of second degree kidnapping and false imprisonment.

¶ 62 Because false imprisonment is a lesser included offense of second degree kidnapping, the elements of second degree kidnapping necessarily includes all the elements of false imprisonment. *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 64 ("[W]e hold that an offense is a lesser included offense of another offense if the elements of the lesser offense are a subset of the elements of the greater offense, such that the lesser offense contains only elements that are also included in the elements of the greater offense."). The requirement that the defendant seize and carry the victim from one place to another is the distinguishing element between second degree kidnapping and false imprisonment. *See Arispe*, 555 P.2d at 527 ("The element contained in second degree kidnapping and not contained in false imprisonment is that of *transportation* of the victim.").

¶ 63    The jury here convicted Denny of both crimes.  In doing so, it found that he had committed all of the elements of second degree kidnapping, including seizing and carrying the victim from one place to another.  Denny provides us with no compelling reason why the jury would have concluded that he was not guilty of second degree kidnapping if it were forced to choose between the two crimes.

¶ 64    The only thing Denny offers in support of this argument is an expansion of his earlier sufficiency of the evidence challenge by again asserting the seizure and carry element was not proved.  But as we note above, there is ample evidence upon which the jury could conclude that this seizure and carrying occurred.  And having already determined that sufficient evidence supported the jury's conclusion, we will not reweigh that evidence now.  *See People v. Strickler*, 2022 COA 1, ¶ 11 (noting that an appellate court "may not reweigh the evidence or substitute our judgment for that of the jury").

¶ 65    For an error to be substantial, it "must [have] 'so undermine[d] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'"  *Hoggard*, ¶ 13

(quoting *Weinreich*, 119 P.3d at 1078).  Under these circumstances, we conclude that any alleged error in the instructions did not affect the fundamental fairness of Denny's trial and was therefore not plain.

¶ 66    Further, the outcome of the trial was that the jury rendered verdicts against Denny on both charges.  But Denny is not entitled to be free of a jury verdict on two crimes arising from the same conduct.  He is only entitled to be free of "multiple punishments in the form of two convictions for the same conduct when the lesser offense is included in the greater offense," unless the General Assembly specifically provides otherwise.  *Whiteaker v. People*, 2024 CO 25, ¶ 10.  When the trial court merges multiple convictions before sentencing, multiple punishments for multiplicitous convictions are not imposed.  *See People v. Rhea*, 2014 COA 60, ¶ 19 ("[A]ny double jeopardy concerns arising from multiplicitous charges and convictions were cured by merger at sentencing . . . .").

¶ 67    Thus, the trial court did not plainly err by not providing an additional instruction, and it appropriately resolved any constitutional concerns with the verdict by merging the convictions.

## III.    Disposition

¶ 68    The judgment is affirmed.

JUDGE HARRIS and JUDGE YUN concur.